THOMAS B. GANNETT, administrator, *vs.* CITY OF CAMBRIDGE.

SAME *vs.* SAME.

SAME *vs.* SAME.

Middlesex.    March 27, 1914. — May 22, 1914.

Present: RUGG, C. J., HAMMOND, SHELDON, DE COURCY, & CROSBY, JJ.

*Tax,* Assessment.    *Statute,* Construction, Repeal.

Where property of a person has been assessed for taxation as of April 1 of a certain year, the power of the assessors to increase the assessment for that year on account of property that has been omitted from the annual assessment, given by St. 1909, c. 490, Part I, § 85, as amended by St. 1911, c. 89, is confined to the period of eleven days there prescribed and cannot be exercised after December 20 of the year in question; and an attempt by the assessors to increase such an assessment in May of the following year, upon a recommendation by the tax commissioner under St. 1910, c. 260, of a revision of the valuation of the property, is void.

St. 1910, c. 260, giving the tax commissioner power to recommend to boards of assessors a revision of the valuation of property, did not repeal or amend St. 1909, c. 490, Part I, § 85, which required that an additional assessment by assessors upon property omitted from the regular assessment should be made between the fifteenth and twentieth days of December next ensuing; and by St. 1911, c. 89, such an additional assessment must be made "between the tenth and twentieth days, both inclusive, of December next ensuing."

CONTRACT by the administrator of the estate of Thomas Gannett, late of Cambridge, who died on December 9, 1912, to recover the sum of $22,791.27 with interest from August 4, 1913, as the amount of a tax assessed for the year 1912 and paid to the city of Cambridge under protest. Writ dated August 7, 1913; and a

PETITION under St. 1909, c. 490, Part I, § 77, filed on August 4, 1913, by the same administrator, appealing from the refusal of the assessors of the city of Cambridge to abate the tax above mentioned; also a

PETITION filed on the same day under St. 1910, c. 260, appealing from the revision of the valuation of the property of the petitioner's intestate by the tax commissioner which was the basis of the assessment of the tax.

In the Superior Court the three cases were heard together by *Wait,* J., upon an agreed statement of facts, which included the facts stated in the opinion. The judge found the facts to be as stated. In the action of contract he found for the plaintiff in the sum of $23,566.17, and at the request of the parties reported the case for determination by this court with the stipulation that, if this finding was correct, judgment should be entered for the plaintiff, and that, if it was wrong, such entry or order should be made as justice required. He denied the petition for an abatement and ordered that the appeal under St. 1910, c. 260, be dismissed, and at the request of the parties also reported those cases for determination by this court.

The cases were submitted on briefs.

*A. Hemenway,* for the administrator.

*J. F. Aylward,* for the defendant and respondent.

*H. R. Bailey & E. B. Church,* as counsel in another case involving the same questions, were permitted also to file a brief.

DE COURCY, J. In the regular assessment of taxes for the year 1912, the board of assessors of Cambridge assessed to Thomas B. Gannett, a resident who had filed no list of his estate, a tax on personal estate valued at $50,000. On October 9, 1912, he paid his total tax, including that on real estate owned by him. His death occurred on December 9, 1912; and the plaintiff was appointed administrator of his estate in the following January. On May 19, 1913, the tax commissioner of the Commonwealth, assuming to act under the authority conferred on him by St.

1910, c. 260, wrote to the board of assessors that in his opinion the personal property of Gannett was not properly valued for the purposes of taxation for the year 1912, and recommended that they revise the tax assessed to him from one based on a valuation of $50,000 to a tax at a valuation of $1,153,800. Thereupon the assessors voted that the 1912 tax assessed to Gannett be revised as so recommended; they entered the sum of $1,103,800 in the book used for listing the additional December assessments (made in accordance with St. 1909, c. 490, Part I, § 85), and wrote across the left hand page "Supplemental Warrant May 20, 1913." They then sent to the collector of taxes a communication notifying him of their action and directing him to collect from Thomas B. Gannett the revised tax. The administrator paid the tax under protest, and brought the action and the two petitions, representing different forms of remedy. The judge of the Superior Court heard the cases upon an agreed statement of facts and reported them to this court after a finding for the plaintiff in the action of contract.

The cases involve the construction of St. 1910, c. 260, § 1, which reads as follows: "If in the opinion of the tax commissioner any property in the Commonwealth is not properly valued for the purposes of taxation, he shall have authority to recommend to local boards of assessors a revision of the same. If such recommendation is accepted and adopted by the local boards the new assessment shall thereupon be operative. Any person aggrieved by such revision may appeal to the Superior Court for the county in which the property is situated." This is in the precise language of St. 1908, c. 550, § 5, which was omitted when the laws concerning taxation were codified in 1909 (St. 1909, c. 490), and was re-enacted on the recommendation of the tax commissioner. In view of the radically different interpretations placed on the broad language of the present act by the parties to this controversy, a review of its history may manifest more clearly the purpose of the Legislature in enacting it.

The commission on taxation, appointed under the provisions of c. 129 of the Resolves of 1907, to investigate the subject of taxation and to codify, revise and amend the laws relating thereto, transmitted their report to the Legislature in January, 1908. Among other subjects, the report discussed that of "supervision

of the assessment of property for taxation." After dwelling upon the need of greater uniformity in the administration and enforcement of the law throughout the Commonwealth, they recommended a measure designed to extend the supervision already exercised by the State over the assessment of property. The fourth section of their proposed bill was as follows: "The supervisors of assessors shall, under the direction of the tax commissioner, on or before the first day of May in each year, furnish to each board of assessors of the cities and towns of the Commonwealth all the information relating to the assessment, valuation and ownership of property of any inhabitant of said city or town that has come into the possession of the tax commissioner's department, particularly under the provisions of chapter five hundred and sixty-three of the acts of the year nineteen hundred and seven. They shall have authority, under the direction of the tax commissioner, to revise the valuation of all property for the purposes of taxation; and any person aggrieved by such revision may appeal to the Superior Court for the county in which the property is situated. They shall render to said boards of assessors such further instruction and supervision as to their respective duties as may be necessary to secure uniform assessment and just taxation and to equalize the valuation of property for purposes of state, county and local taxation." This, with the exception of the portion in parentheses, was enacted as § 4 of St. 1908, c. 550, under the title "An Act to provide for the more effective administration of the laws relating to taxation;" and § 5, as already stated, was in the precise language adopted later in the 1910 act. When the taxation laws were codified in 1909 this fifth section was omitted. Its re-enactment in the statute under consideration was due to the recommendation of the tax commissioner, who in his report for the year 1909 (page 23) said: "This provision was omitted from the codification, on the ground that there were other provisions of the statutes which practically covered it; namely, the power of the commissioner to direct assessors to adopt adequate methods of keeping their records, or to make fuller examination of the records of the registry of deeds and probate court, or to make use of information that the tax comissioner has furnished to them. But it is clear, on reading the two sections side by side, that the power

to recommend action on the part of assessors for the purpose of obtaining or using information did not include the power of recommending revisions of valuations, and that something was lost by the omission."

When examined in the light of this history it seems plain that it was not the purpose of the commission to recommend or of the Legislature to create a new power to assess taxes. Furthermore if the radical change in our system of assessing taxes contended for by the city had been intended, the Legislature presumably would have added provisions in detail for the assessment, entry and collection of the new tax, the limit of time within which it might be assessed, and the liens to be created by it, and would have made changes in existing statutes, such as those needed for the protection of persons interested in the settlement of estates, and in the purchase and sale of real estate subject to possible liens created by the act. The purpose of the statute, as indicated by its history and reasonably clear from its language, was to give the tax commissioner power to recommend changes in valuation, and thereby assist the local assessors in performing their duties, in order that inequalities arising from the omission or undervaluation of property might be corrected by the assessors in the exercise of powers which they already possessed.

The power to add to the tax list after it has been committed to the collector has been given to the assessors since 1868. See Sts. 1868, c. 320; 1873, c. 272; Pub. Sts. c. 11, § 78; Sts. 1886, c. 85; 1888, c. 362; R. L. c. 12, § 85. Previous to these enactments, they had no authority to make any further assessment after the warrant had left their hands. *Opinion of the Justices,* 18 Pick. 575. And see *Lowell* v. *County Commissioners,* 3 Allen, 546, 548, 549; *Charland* v. *Home for Aged Women,* 204 Mass. 563, 569. And although the early statutes permitted them to add only property which they should "discover" to have been omitted from the last annual assessment, the right of the tax commissioner to give them information has existed since at least 1898. See St. 1898, c. 507, § 3. When the statute of 1910 was passed, the time for the addition of property omitted from the regular assessment was the period between December 15 and 20. St. 1909, c. 490, Part I, § 85. The statute under consideration does not purport to repeal or amend that provision. On the contrary

the Legislature in 1911 expressly indicated its adherence to the policy of assessing taxes as we go along, by limiting the time of making omitted assessments "between the tenth and twentieth days, both inclusive, of December next ensuing." St. 1911, c. 89.

This is decisive of the cases at bar. The tax in controversy was not a new and separate tax, but was omitted from and in legal effect was a part of the annual assessment, made as of April 1, 1912. We find no authority in the St. of 1910, or elsewhere in our tax laws, for the action of the board of assessors in assessing the tax in question on May 20, 1913, which was five months after the last day when assessments for omitted property could be made for the year 1912. In the meantime a new municipal year had begun, with its new appropriations, and its time as of which must be assessed the taxes of another year; and the time had expired for performing the duties pertaining to the taxation of property for the year 1912. See, for instance, St. 1909, c. 490, Part I, §§ 59, 60, 100, 101. We are of opinion that the assessors acted without legal authority in assessing the tax in question subsequent to December 20, 1912, and that consequently the assessment is void. The action of the judge of the Superior Court was correct. *Harrington* v. *Glidden,* 179 Mass. 486, and cases cited. *Wheatland* v. *Boston,* 202 Mass. 258. The petition for abatement is to be denied, and the appeal under St. 1910, c. 260, dismissed. In the action of contract judgment is to be entered on the finding for the plaintiff.

*So ordered.*