CECIL

COMMISSIONER OF CORPORATIONS AND TAXATION *vs.* ASSESSORS OF SPRINGFIELD.

Suffolk.    October 6, 1952. — November 6, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Moot Question.    Taxation,* Telephone company, Telegraph company.

An appeal to the Appellate Tax Board under G. L. (Ter. Ed.) c. 59, § 39, as amended, by a board of assessors from the valuation of property of telephone and telegraph companies made by the commissioner of corporations and taxation for a certain year under that statute should have been dismissed on the ground of mootness where no decision on such appeal was rendered by the Appellate Tax Board until after December 1 in that year.

APPEALS from a decision by the Appellate Tax Board and from its denial of a motion to dismiss.

*H. William Radovsky,* Assistant Attorney General, for the commissioner of corporations and taxation.

*Charles D. Sloan,* City Solicitor, for the assessors of Springfield.

WILKINS, J.    This is an appeal from a decision of the Appellate Tax Board determining the valuation of the prop-

erty of New England Telephone and Telegraph·Company, American Telephone and Telegraph Company, and Western Union Telegraph Company, subject to taxation in the city of Springfield for the year 1950. G. L. (Ter. Ed.) c. 59, § 39, as amended by St. 1933, c. 254, § 36, and St. 1939, c. 451, § 22.[1] The decision upheld the contentions of the board of assessors, which had appealed to the Appellate Tax Board from the valuations of the commissioner of corporations and taxation. The decision, however, was not rendered until December 13, 1951. In the preceding January the commissioner filed a motion that the assessors' appeal to the Appellate Tax Board be dismissed by reason of having become moot. The motion was denied, and the commissioner appealed.

The ground of mootness presented for consideration is that it had become too late for the assessors to make their assessment for 1950 under c. 59, § 39, as amended. This section provides that the valuation of the property of telephone and telegraph companies to be assessed by local assessors shall be determined in the first instance by the commissioner and certified by him before March 15 to the assessors, who, if aggrieved, may "apply" within ten days to the Appellate Tax Board, whose decision as to valuation "shall be final and conclusive" except for abatements by

---

[1] The full text of § 39, as amended, is: "The valuation at which the machinery, poles, wires and underground conduits, wires and pipes of all telephone and telegraph companies shall be assessed by the assessors of the respective towns where such property is subject to taxation shall be determined annually by the commissioner, subject to appeal to the appellate tax board, as hereinafter provided, and shall by him be certified to the assessors on or before March fifteenth. A board of assessors aggrieved by a valuation made by the commissioner under this section may, within ten days after notice of his valuation, apply to said appellate tax board. Said board shall hear and decide the subject matter of such appeal and give notice of its decision to the commissioner and to the assessors; and its decision as to the valuation of the property shall be final and conclusive, except as provided in section seventy-three, relative to abatements. The assessors shall, in the manner provided by law, assess the machinery, poles, wires and underground conduits, wires and pipes of all telephone and telegraph companies as certified and at the value determined by the commissioner or by the appellate tax board, and such assessment by a board of assessors shall be deemed to be a full compliance with the oath of office of each assessor and a full performance of his official duty with relation to the assessment of such property, except as provided in the following section [40]," relating to information to be furnished to the commissioner by the assessors.

the commissioner under § 73. The assessors "in the manner provided by law" shall assess the property "as certified and at the value determined by the commissioner or by the appellate tax board."

Section 73 of c. 59, as amended by St. 1933, c. 254, § 44, provides in part: "Any company aggrieved by the taxes assessed on it relating to any property valued in accordance with section thirty-nine may, on or before December first of the year to which the tax relates, apply to the commissioner for an abatement thereof; and if the commissioner finds that the company is taxed at more than its just proportion, or upon an assessment of any of its said property in excess of its fair cash value, he shall make a reasonable abatement." It thus is evident that an aggrieved taxpayer must act not later than December 1 of the year to which the tax relates. Until an assessment is made by the assessors the taxpayer cannot act to protect itself. If a controversy between the commissioner and a local board of assessors is protracted beyond the year to which the tax relates, the taxpayer must sit futilely by while its rights expire, should the contention of the assessors in the present case be accepted.

Section 39 places no date or time limit for the determination by the Appellate Tax Board. But it is apparent that if the assessors are to assess "in the manner provided by law" and in accordance with the board's decision, such decision must be made seasonably. The assessors must assess "annually." G. L. (Ter. Ed.) c. 59, § 23, as amended. See § 47, as amended. If any taxable estate of a person "has been omitted from the annual assessment of taxes, the assessors shall between December tenth and twentieth following . . . or at such earlier time as the commissioner may in writing approve, assess such person for such estate." G. L. (Ter. Ed.) c. 59, § 75, as amended by St. 1934, c. 104, and St. 1946, c. 339.

The record does not show that an assessment was made during the year 1950 in the case at bar. At the arguments before us, it was stated that an assessment had been made,

but we are not sure in what amount. There was no stipulation of counsel. If an assessment was made in the amount determined by the commissioner, which was the only amount available for use in 1950, the case is moot. The higher valuation of the Appellate Tax Board could not be made the basis of an assessment of omitted property after December 20. *Gannett* v. *Cambridge*, 218 Mass. 60, 64–65. Nor would it be a tax "which is invalid by reason of error or irregularity in the assessment." G. L. (Ter. Ed.) c. 59, § 77, as appearing in St. 1945, c. 333. If an assessment was made in the amount contended for by the assessors and adopted in the decision of the Appellate Tax Board late in 1951, it was not, of course, in accord with § 39, as amended, because at no time in 1950 was there any valuation determined by the Appellate Tax Board. If it be argued that there should be a reassessment under § 77, the only figure which could properly be used would be the value determined by the commissioner, and the case would still be moot.

We cannot accept the contention of the assessors that § 39, as amended, authorizes an assessment at any remote future date so long as it be "at the value determined by . . . the appellate tax board." Viewing the pertinent statutory provisions as a whole, it is clear that the Legislature intended the decision of the Appellate Tax Board to be "final and conclusive, except as provided in section seventy-three, relative to abatements." As between the commissioner and the Appellate Tax Board, the commissioner under § 73 has the later function to perform. He has the duty to make an abatement if he finds a company taxed "at more than its just proportion," or upon an assessment of property "in excess of its fair cash value." Where the Appellate Tax Board defers its decision until after December first, the later function of the commissioner on abatements would become a dead letter. It seems plain to us that the Legislature never meant that to happen.

The decision is reversed. The order denying the commissioner's motion to dismiss the assessors' appeal to the Ap-

pellate Tax Board is reversed.   Instead an order is to be entered granting the commissioner's motion to dismiss the assessors' appeal on the ground of mootness.

*So ordered.*