ASSESSORS OF SPRINGFIELD *vs.* NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY.

Suffolk. April 6, 1953. — May 4, 1953.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Taxation,* Telephone company, Telegraph company. *Words,* "Shall."

G. L. (Ter. Ed.) c. 59, § 39, as amended, prescribes a mandatory method by which specified property of telephone and telegraph companies must be valued for assessment of taxes by assessors; and an assessment of such property of a telephone and telegraph company by as-

sessors at a value determined by themselves and not "at the value determined by the commissioner [of corporations and taxation] or by the appellate tax board" as required by that section was not in conformity to law and was invalid, and the tax assessed on the property according to the assessors' valuation must be abated in full.

APPEAL from a decision by the Appellate Tax Board.

In this court the case was submitted on briefs.

*Charles D. Sloan,* City Solicitor, for the assessors of Springfield.

*Leland Powers & George N. Hurd, Jr.,* for the taxpayer.

QUA, C.J.    The assessors appeal from a decision of a majority of the Appellate Tax Board abating as illegal an assessment made by the assessors for the year 1950 upon machinery, poles, wires and underground conduits, wires and pipes of the company.   The ground of illegality is failure to assess in accordance with G. L. (Ter. Ed.) c. 59, § 39, as appearing in St. 1933, c. 254, § 36, and as most recently amended by St. 1939, c. 451, § 22.   The entire section as amended is printed in the footnote.[1]

The facts essential to an understanding of the issue now

---

[1] "The valuation at which the machinery, poles, wires and underground conduits, wires and pipes of all telephone and telegraph companies shall be assessed by the assessors of the respective towns where such property is subject to taxation shall be determined annually by the commissioner, subject to appeal to the appellate tax board, as hereinafter provided, and shall by him be certified to the assessors on or before March fifteenth.   A board of assessors aggrieved by a valuation made by the commissioner under this section may, within ten days after notice of his valuation, apply to said appellate tax board.   Said board shall hear and decide the subject matter of such appeal and give notice of its decision to the commissioner and to the assessors; and its decision as to the valuation of the property shall be final and conclusive, except as provided in section seventy-three, relative to abatements.   The assessors shall, in the manner provided by law, assess the machinery, poles, wires and underground conduits, wires and pipes of all telephone and telegraph companies as certified and at the value determined by the commissioner or by the appellate tax board, and such assessment by a board of assessors shall be deemed to be a full compliance with the oath of office of each assessor and a full performance of his official duty with relation to the assessment of such property, except as provided in the following section."

Section 73, as appearing in St. 1933, c. 254, § 44, to which reference is made in § 39, provides that any company aggrieved by the taxes assessed on it relating to any property valued in accordance with § 39 may, on or before December 1 of the year to which the tax relates, apply to the commissioner for an abatement.

The "following section" (§ 40) requires assessors to furnish to the commissioner information in regard to property which by § 39 he is required to value.

presented appear in a "Case Stated" filed with the board and are these: On February 10, 1950, the commissioner of corporations and taxation in accordance with § 39 certified to the assessors the value of the property here involved as $3,265,400. On February 16 the assessors appealed this valuation to the board, which nearly twenty-two months later, on December 13, 1951, determined the value of the property to be $6,382,328. Upon appeal to this court the decision of the board fixing the last mentioned value was reversed and the proceeding in which that value was fixed was ordered dismissed as moot for the reason that any decision of the board would then necessarily come so late that the company would lose the right of appeal to the commissioner secured to it by § 73, which it must exercise not later than December 1, 1950. *Commissioner of Corporations & Taxation* v. *Assessors of Springfield,* 329 Mass. 419. In the meantime, however, the assessors, in August, 1950, after the commissioner's valuation had been certified to them and after they had appealed from that valuation to the board but before the board had rendered any decision, assessed the property at a valuation fixed by themselves of $6,293,400, which was not far from twice the value certified by the commissioner. The issue now to be decided is whether this assessment by the assessors in August, 1950, was valid. Upon appeal by the company to the board, the board ordered an abatement in the sum of $283,203, being the amount of the tax assessed.

It is plain that this assessment by the assessors at a valuation determined by themselves was not in accordance with § 39, which provides for an assessment by the assessors "at the value determined by the commissioner or by the appellate tax board." But the assessors contend that they were not required to act in conformity with § 39; that their general powers of valuation and assessment of property under § 38 and other sections of c. 59 remained unimpaired notwithstanding the enactment of § 39; that they acted lawfully under their general powers; and that § 39 merely furnished an alternative method of valuation which they

were not obliged to adopt and which was permissive only and not mandatory or compulsory.

We are unable to accept the contentions of the assessors.

Section 39 reads, "The valuation at which the machinery, poles, wires and underground conduits, wires and pipes of all telephone and telegraph companies shall be assessed by the assessors of the respective towns where such property is subject to taxation shall be determined annually by the commissioner, subject to appeal to the appellate tax board . . . ." "The assessors shall, in the manner provided by law, assess the machinery, poles, wires and underground conduits, wires and pipes of all telephone and telegraph companies as certified and at the value determined by the commissioner or by the appellate tax board . . . ," with a further provision that such assessment shall be deemed full compliance with the oaths of office of the assessors and full performance of their official duty, except for the requirement of giving information to the commissioner under § 40. It is difficult to see how language could have been framed which would more clearly and categorically impose an absolute obligation upon the assessors. Although undoubtedly in some contexts the word shall can be construed as equivalent to may, its usual and correct signification is mandatory. *McCarty* v. *Boyden,* 275 Mass. 91, 93. *Opinion of the Justices,* 300 Mass. 591, 593. *Elmer* v. *Commissioner of Insurance,* 304 Mass. 194, 196. *Brennan* v. *Election Commissioners of Boston,* 310 Mass. 784, 786. *Jenney* v. *Assessors of Mattapoisett,* 322 Mass. 76, 78. In this instance the context tends to reinforce its mandatory character. If § 39 had been intended to be merely advisory or alternative, leaving it discretionary with the assessors whether or not they would assess in accordance with that section, there would have been no point in granting to the assessors a right to appeal from the commissioner's valuation to the Appellate Tax Board. One does not need an appeal from a decision which he can disregard at pleasure.

An examination of the history of § 39 leads to the same conclusion. That section was originally enacted as St. 1915,

c. 137, § 1. The tax commissioner in his report for the year ending November 30, 1914, at pages 27–30, had forcefully directed attention to the difficulties involved in the assessing of poles, wires, and underground conduits by local assessors, who in general were unfamiliar with the value of such property, and who were obliged to place values upon fragments of a system which ought to be valued as a whole. He complained that "There has thus grown up in the various cities and towns of the Commonwealth the greatest inequality in standards of valuation for poles, wires and underground conduits. It has been impossible to establish any proper standard of depreciation or to secure adequate consideration of the factors of disuse and abandonment of property. The companies themselves are put to unnecessary inconvenience, and justly complain of the various standards of valuation adopted by the different cities and towns. They find themselves justly irritated where a line of poles and wires is valued at one basis of value per mile in one town and at quite another basis of value in the adjoining town, whereas the property in the two towns is the same in character, in cost of construction and in general condition." He strongly recommended the method in use in some other States whereby a State agency valued the system as a whole and certified to the cities and towns the proportion of the whole located within their limits. At the next session of the Legislature after this report the act of 1915 was passed. That act was in the form, common at that time, of an entirely new enactment and not in the form of amendments to existing laws. It therefore had the effect of overriding all previous laws inconsistent with it. It cannot be doubted that the act of 1915 was intended to adopt the recommendation of the tax commissioner with respect to the "poles, wires, and underground conduits, wires and pipes" of telephone and telegraph companies and to take the valuation of such property out of the hands of local boards of assessors and to require them to accept the valuations of the tax commissioner, subject to appeal to the designated board. To hold that this act was intended

merely as an alternative to previously existing methods of valuation and as advisory and not mandatory upon local assessors would be to perpetuate the very conditions which both the words of the statute and the circumstances of its enactment show were intended to be corrected.

In so far as there are any decided cases bearing upon the issue they point in the same direction. In *Assessors of Springfield* v. *Commissioner of Corporations & Taxation*, 321 Mass. 186, at pages 189–190 we said that § 39 "imposes no tax on the classes of property therein enumerated, but, in conjunction with the three following sections (40, 41 and 42), *prescribes* [italics supplied] the procedure by which such property, to the extent that it is subject to local taxation under other statutory provisions, shall be valued for assessment." In *County of Middlesex* v. *Waltham*, 278 Mass. 514, where a statute provided that "The assessors of any town in which county commissioners hold land for . . . [hospital purposes] shall assess such land to the county in the annual valuation and tax list at the value determined by the commissioner . . . [of corporations and taxation] and at the tax rate of the town for that year," and where the commissioner had failed to make such valuation, it was held that the assessors had no authority to assess the land, and that attempted assessments by them were invalid.

The assessors press upon our attention certain other provisions of statute, particularly, G. L. (Ter. Ed.) c. 59, § 38, c. 63, § 55, as appearing in St. 1951, c. 641, § 12, and c. 63, § 68A, as appearing in St. 1947, c. 622, § 4, which they contend indicate that the local assessors still possess power to assess the property here involved at valuations fixed by themselves. We have considered the arguments based on these sections and are not impressed by them. Some of the provisions of these sections antedated the statute of 1915 and were overridden by that statute as to the assessment of the machinery, poles, wires and underground conduits, wires and pipes of telephone and telegraph companies. Others apply generally and still have full scope with relation to other kinds of property or to the poles, wires and

underground conduits, wires and pipes of companies other than telephone or telegraph companies. There is nothing in these sections, whether considered separately or together, sufficient to overcome the plain requirements of § 39 in the limited field in which that section operates.

When the questioned assessment was made in August, 1950, the only legal basis for a valuation was that certified by the commissioner. The assessors had appealed from the commissioner's valuation, but the Appellate Tax Board had made no decision and never in fact made a binding decision because the decision which was made long after the assessment was reversed by this court, and the proceeding before the board was ordered dismissed. *Commissioner of Corporations & Taxation* v. *Assessors of Springfield*, 329 Mass. 419. It follows that the assessment made by the assessors at a value fixed by themselves and not "at the value determined by the commissioner or by the appellate tax board," as required by § 39, was not according to law and was invalid, and the tax must be abated. We do not see how it is possible to treat the case as merely one of over assessment and to abate only so much of the tax as is proportionate to the amount by which the assessors' valuation exceeded that of the commissioner, since the result of so doing would be to fix the commissioner's valuation upon the company and to deprive it of its right to apply for an abatement under c. 59, § 73, a right which it would have been obliged to exercise on or before December 1, 1950, but which it has never been in a position to exercise because in the assessment the property was not "valued in accordance with section thirty-nine." *Commissioner of Corporations & Taxation* v. *Assessors of Springfield*, 329 Mass. 419. It becomes unnecessary to consider the effect of a waiver by the company before the Appellate Tax Board of "any issue of overvaluation."

In our opinion the decision of the majority of the Appellate Tax Board was right, and the tax must be abated in the amount of $283,203.

*So ordered.*