STATE TAX COMMISSION *vs.* ASSESSORS OF SPRINGFIELD.

Suffolk.    October 6, 1954. — November 1, 1954.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Taxation,* Telephone company; Telegraph company; Appellate Tax
Board: appeal to board, jurisdiction of board. *Evidence,* Opinion:
expert; Of value. *Words,* "Apply."

Upon an appeal to the Appellate Tax Board under G. L. (Ter. Ed.) c. 59,
§ 39, as appearing in St. 1953, c. 654, § 32, by assessors from a valua-
tion of property of telephone and telegraph companies made by the
State tax commission, the board has power to determine the fact of
the value of the property upon competent evidence in the manner
usual to proceedings before it; the assessors do not have the burden
of proving that the valuation made by the commission was erroneous,
unfair or unreasonable. [679–682]
At the hearing of an appeal to the Appellate Tax Board under G. L.
(Ter. Ed.) c. 59, § 39, as appearing in St. 1953, c. 654, § 32, by assessors
from a valuation of property of telephone and telegraph companies
made by the State tax commission, an opinion of a qualified expert
witness for the assessors as to the value of substantial underground
plant not seen by him was incompetent where there was no direct
evidence describing the nature and amount of such plant and the sole
foundation for his opinion was certain inventories, conduit prints and
reports made by the companies which were not introduced in evidence
nor their contents shown; and a decision of the board adopting the
expert's valuation was reversed. [684–685]

APPEAL from a decision by the Appellate Tax Board.

*John V. Phelan,* Assistant Attorney General, (*George Luftman* with him,) for the State tax commission.

*Charles D. Sloan,* City Solicitor, for the assessors of Springfield.

WILKINS, J. This is an appeal by the State tax commission from a determination by the Appellate Tax Board of the valuation of the "machinery, poles, wires and underground conduits, wires and pipes" located in Springfield belonging to three public utility companies on January 1, 1954. This is the first occasion the main question as to the scope of this type of proceedings before the Appellate Tax Board has reached us at a time when we have not been constrained to term the issue moot. See *Commissioner of Corporations & Taxation* v. *Assessors of Springfield,* 329 Mass. 419; *Assessors of Springfield* v. *New England Telephone & Telegraph Co.* 330 Mass. 198; *Commissioner of Corporations & Taxation* v. *Assessors of Springfield,* 330 Mass. 433; *Commissioner of Corporations & Taxation* v. *Assessors of Haverhill,* 330 Mass. 553; *State Tax Commission* v. *Assessors of Haverhill, ante,* 306.

On March 5, 1954, the tax commission certified to the assessors that the valuations as of January 1, 1954, at which the assessors should assess the property pursuant to G. L. (Ter. Ed.) c. 59, § 39, as appearing in St. 1953, c. 654, § 32, were:

|  | Poles, wires and underground conduits, wires and pipes | Machinery | Total |
|---|---|---|---|
| American Telephone & Telegraph Company | $323,600 | $3,600 | $327,200 |
| New England Telephone & Telegraph Company | 3,491,600 | 129,900 | 3,621,500 |
| Western Union Telegraph Company | 31,000 | | 31,000 |

On March 11, 1954, the assessors appealed to the Appellate Tax Board, which on May 11, 1954, conducted a hearing at which the only witness to value was one Hill, of Chicago, Illinois, an expert who testified on behalf of the assessors that in his opinion the valuations should be:

State Tax Commission *v.* Assessors of Springfield.

| | Poles, wires and underground conduits, wires and pipes | Machinery | Total |
|---|---|---|---|
| American Telephone & Telegraph Company | $660,734 | $4,350 | $665,084 |
| New England Telephone & Telegraph Company | 11,027,149 | 137,860 | 11,165,009 |
| Western Union Telegraph Company | 61,025 | | 61,025 |

The Appellate Tax Board, on June 22, 1954, in a majority decision, accepted the testimony of the expert to the fullest extent and adopted his exact figures as the fair cash value of all the items of property.

1. The tax commission makes the basic contention that in the hearing before the Appellate Tax Board the burden was upon the assessors to prove that the original determination of value made by the tax commission was in error, unfair, unreasonable, arbitrary, or capricious. We are unable to discover such a requirement in the pertinent statutes, which, although recently amended, have not undergone substantial change. The only new wording arises from the reorganization of the department of corporations and taxation and the substitution of the State tax commission for the commissioner of corporations and taxation.

We turn first to G. L. (Ter. Ed.) c. 59, § 39, as appearing in St. 1953, c. 654, § 32. This provides that the "valuation" at which property such as that here involved shall be assessed by the assessors "shall be determined annually by the state tax commission subject to appeal to the appellate tax board." The tax commission by March 15 must certify the valuation to the assessors who if "aggrieved by a valuation made by the state tax commission . . . may, within ten days after notice of its valuation, apply [1] to said ap-

---

[1] The word "apply" is undoubtedly synonymous with "appeal." See G. L. (Ter. Ed.) c. 58A, § 6, as amended by St. 1953, c. 654, § 24. In the immediately preceding revision of § 39 the word was "appeal." St. 1953, c. 468, § 32. In earlier predecessor statutes the word was "apply." To the Board of Appeal: St. 1915, c. 137, § 1. St. 1918, c. 138. G. L. c. 59, § 39. To the Board of Tax Appeals: St. 1930, c. 416, § 12. G. L. (Ter. Ed.) c. 59, § 39. St. 1933, c. 254, § 36. To the Appellate Tax Board: see St. 1939, c. 451, § 22.

pellate tax board." "[W]ith as little delay as possible" the "board shall hear and decide the subject matter of such appeal . . . and its decision as to the valuation of the property shall be final and conclusive, except as provided in section seventy-three, relative to abatements." The assessors shall assess the property "at the value determined by the state tax commission or by the appellate tax board."

Up to this point the taxpayer is not a party to the proceedings. But by G. L. (Ter. Ed.) c. 59, § 73, as amended, "Any company aggrieved by the taxes assessed on it relating to any property valued in accordance with section thirty-nine may, on or before December first of the year to which the tax relates, apply to the commission for an abatement thereof; and if the commission finds that the company is taxed at more than its [the company's] just proportion, or upon an assessment of any of its [the company's] said property in excess of its [the property's] fair cash value, it [the commission] shall make a reasonable abatement." The assessors may be heard on the matter of abatement, but only the taxpayer may appeal.

The Appellate Tax Board "shall have jurisdiction to decide appeals" under the provisions, among others, of c. 59, §§ 39, 73. G. L. (Ter. Ed.) c. 58A, § 6, as amended. "The board shall make a decision in each case heard by it and may make findings of fact and report thereon in writing. . . . The decision of the board shall be final as to findings of fact. From any decision of the board upon an appeal from a decision or determination of the commission, or of a board of assessors . . . [with exceptions now immaterial] an appeal as to matters of law may be taken to the supreme judicial court . . . ." G. L. (Ter. Ed.) c. 58A, § 13, as amended.

In support of the contention that the Appellate Tax Board lacked power in an appeal under § 39 to determine the fact of value in the manner usual to proceedings before that board, the tax commission advances considerations designed to make procedure under §§ 39 and 73 reasonably workable. One ground of objection is the lack of any provision

for admitting the taxpayer before the Appellate Tax Board at the hearing of an appeal by assessors pursuant to § 39, and the anomaly of excluding from participation the one whose property is to be valued for the assessment of a tax to be paid by him.

Another objection is that to permit the Appellate Tax Board to determine value in its usual way would defeat the legislative purpose which is to secure uniformity of valuation among cities and towns. We are referred to the 1914 report of the tax commissioner, quoted in part in *Assessors of Springfield* v. *New England Telephone & Telegraph Co.* 330 Mass. 198, 202, in which the tax commissioner strongly complained against piecemeal valuation of the systems of poles, underground conduits, and wires of telephone and telegraph companies by boards of assessors of various municipalities, acting severally according to individual standards, often in mutual conflict, and reaching inconsistent results. It is now argued that the uniformity which we held (330 Mass. at page 202) was sought by St. 1915, c. 137, § 1, the first predecessor of § 39, cannot be attained if the Appellate Tax Board is free to conduct hearings and render decisions upon the opinion evidence of whatever witnesses happen to be called on behalf of the assessors of each municipality. We are told that there will be as many different values as there are persons called upon for an opinion, if the only issue is that of value, and if the same witnesses are not called in each case. It is further intimated that the right of appeal given the assessors will become meaningless if the issue of fair value can thus be raised and decided. This last reference is, of course, to the subsequent abatement proceedings established under § 73, as amended, and to the expectation that the tax commission, unless otherwise convinced in the course of those proceedings, will restore and make final (subject to the taxpayers' right of appeal) the valuations it certified to the assessors at the beginning of the year. The procedure leading to this anticipated result was described at the arguments before us as a merry-go-round. We need not accept the characterization,

but even if it is sound, the procedure is one prescribed in unmistakable statutory detail.

The scheme of §§ 39 and 73 is undoubtedly anomalous, does not insure uniformity to the same extent as would be possible were there no recourse to the Appellate Tax Board, and may waste time. Whether an end should be put to the procedure is not for us to decide.

The tax commission's motion to dismiss and requests for rulings inconsistent with this opinion were rightly denied.

2. The tax commission argues the question of evidence that the record does not contain adequate factual basis for the opinion of Hill. He testified that he was a consulting engineer; that at the request of the Springfield assessors he made an appraisal of the fair cash value as of January 1, 1954, of the properties of the three public utility companies in that city; that he made appraisals for each of the years 1950, 1951, 1952, and 1953; that in making the 1953 appraisal he made an inventory of such properties; that for the earlier appraisals he used as a basis the inventories made by the New England company and the values reported by it to the tax commissioner in earlier years; that in taking the inventory of 1953 he made, or had made under his direction, a field inventory of the poles, lines, cables "and so forth" on private streets and on private properties, made a field inspection of the overhead plant to determine its condition from the standpoint of remaining life and serviceability, including physical deterioration and obsolescence, and made an inventory of the underground conduits of the New England company from the conduit prints it supplied to the city engineer which are kept in the latter's office; that the underground cable was estimated at 75% of the priced cost of the underground conduit, this relationship being based on relationships of underground cable to underground conduit in various Bell companies of a composition somewhat similar to that of the plant in Springfield; that 75% of the overhead plant was inventoried in detail, and was sufficiently large to give an accurate representation of the overhead plant as a whole; that a complete inventory of

aerial cable was made; that it was not possible to examine physically the underground plant because the greater part is under the pavement in the streets; that, so far as he knew, the inventory of underground plant is always made from company records and prints, the locations being checked in the field, as he did; and that he had an opinion as to the fair cash value as of January 1, 1954, of the properties of the New England company in Springfield. The witness was then permitted to testify, subject to the tax commission's exception, that that value was $11,165,009. He further testified that he took into consideration the quantity of plant in place, the value of that plant at 1954 cost levels, the amount of depreciation "and other matters pertaining to or leading to . . . [his] opinion of the fair cash value as what a willing buyer would pay to a willing seller in the case of this property," and the net additions made by the company in 1953.

Subject to the tax commission's exception, the witness testified that in his opinion the total fair cash value of the American company in Springfield on January 1, 1954, was $665,084; that in arriving at that opinion he took into consideration the amount of property indicated by reports of the company to the "tax commissioner" and the witness's own "estimate of the current cost level of that property, its age as indicated by reports of the company to the tax commissioner over a period of years as relating to or as an indication of what a willing buyer would pay a willing seller for that property."

The witness gave his opinion that the fair cash value on January 1, 1954, of the property of the Western Union company in Springfield was $61,025. His reasons were substantially the same as those he gave for the American company.

The detail of the witness's valuations was as follows:

| | New England | American | Western Union |
|---|---|---|---|
| Overhead plant | $984,062 | $1,517 | $7,927 |
| Underground plant | 10,043,087 | 659,217 | 53,098 |
| Machinery | 137,860 | 4,350 | |
| | $11,165,009 | $665,084 | $61,025 |

Considering first the New England company, at least as to the major portion, which is the underground plant, there was no property in evidence before the tribunal sufficiently definite to be given a value. The amount and detail of the underground plant were not presented at first hand or adequately described. The sole foundation for the opinion as to the value of property which the expert did not see and could not see were inventories reported "in earlier years" to "the tax commissioner" and conduit prints in the city engineer's office. The inventories and prints, according to the witness, were made by the taxpayer, which, as has been observed, was not a party to the proceedings. These vaguely identified documents were not offered in evidence, for what reason does not appear. Their contents are not known in this proceeding.

In *National Bank of Commerce* v. *New Bedford*, 175 Mass. 257, 261, there is the statement, often quoted, of Holmes, C.J.: "An expert may testify to value although his knowledge of details is chiefly derived from inadmissible sources, because he gives the sanction of his general experience. But the fact that an expert may use hearsay as a ground of opinion does not make the hearsay admissible." The principle underlying this statement does not save the present situation. We do not have the case of an expert giving an opinion as to value based upon several sources, including hearsay. See *Finnegan* v. *Fall River Gas Works Co.* 159 Mass. 311, 312–313; *Johnson* v. *Lowell*, 240 Mass. 546, 550; *Shaw* v. *Keown & McEvoy, Inc.* 243 Mass. 221, 223; *Commonwealth* v. *Coshnear*, 289 Mass. 516, 526; *Davenport* v. *Haskell*, 293 Mass. 454, 459; *H. & H. Supply Co.* v. *United States*, 194 Fed. (2d) 553 (C. A. 10), including dissenting opinion; *United States* v. *Aluminum Co. of America*, 35 Fed. Sup. 820, 823–825 (D. C. S. D. N. Y.); Maguire and Hahesy, Requisite Proof of Basis for Expert Opinion, 5 Vanderbilt L. Rev. 432. The witness here was admittedly an expert qualified to give an opinion as to the value of the plant of a telephone company, but his experience did not enable him to provide by hearsay the only evidence of what the property was. The

question, which is whether there was any basis for his opinion, is one of substance and not of form. In *New York Central Railroad* v. *Freedman*, 240 Mass. 200, 210, the expert did not provide the only evidence as to what was the property which he had not seen.

The evidence as to the American company and the Western Union company was even more meager. The expert testified that he had obtained the "amount" of property, the amount not being otherwise stated, from reports of these taxpayers to the "tax commissioner." These reports were otherwise undescribed, and the contents of these writings were not attempted in any way to be shown.

That the case was tried before an administrative tribunal and not in a court of law does not render it subject to a different principle. To the slight extent that the record discloses what the property was, there is hearsay exclusively. *Moran* v. *School Committee of Littleton*, 317 Mass. 591. *Sinclair* v. *Director of the Division of Employment Security*, *ante*, 101.

*Decision reversed.*