BOARD OF ASSESSORS OF HOLYOKE *vs.* STATE TAX
COMMISSION & another.

Suffolk.    October 5, 1966. — November 23, 1966.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, SPIEGEL,
& REARDON, JJ.

*Moot Question. Taxation,* Personal property tax: machinery, exemption; Classification of corporation.

Final determination of an appeal by assessors to the Appellate Tax Board under G. L. c. 58, § 2, as amended through St. 1958, c. 490, § 1, from a classification by the State Tax Commission of a corporation as a domestic manufacturing corporation in a certain year was not a condition precedent to an assessment in that year of a local tax on the corporation's "machinery used in manufacture" under c. 59, § 5, Sixteenth (1); and the fact that the appeal was still pending, undecided, before the Appellate Tax Board after the last day for an assessment in that year, December 20, did not render moot the question of classification involved in the appeal where an assessment on the machinery was made prior to December 20 under c. 59, § 75.

APPEAL from a decision of the Appellate Tax Board.

*James D. St. Clair (Robert J. Richards, Jr. & Harold F. Brunault,* Assistant City Solicitor, for Board of Assessors of Holyoke.

*John F. Moriarty (Lane McGovern & John S. Begley* with him) for Holyoke Water Power Company, intervener; *Herbert E. Tucker, Jr.,* Assistant Attorney General, for State Tax Commission, also with him.

CUTTER, J. This is an appeal (see G. L. c. 58, § 2[1]) by the assessors of Holyoke from a decision of the Appellate Tax Board (the board). The case concerns the classification of Holyoke Water Power Company (the company) for purposes of local taxation.

By G. L. c. 59, § 5, Sixteenth (3),[2] a "domestic manufacturing corporation"[3] is exempt from local taxation upon its property other than "real estate, poles and underground conduits, wires and pipes." By § 5, Sixteenth (1), "ma-

---

[1] Section 2 (as amended through St. 1958, c. 490, § 1; see later amendment by St. 1965, c. 696, § 1) reads: "The commissioner shall annually, on or before April first . . . forward to each board of assessors a list of all corporations . . . liable on January first . . . to taxation under chapters . . . [59 and 63]. Such list shall indicate . . . corporations . . . classified by the commissioner as manufacturing corporations . . . . Any person aggrieved by any [such] classification . . . or by any action taken by the commissioner under . . . this section may, on or before April thirtieth . . . file an application with the state tax commission . . . stating therein the classification claimed . . . [proviso not relevant]. The commission shall, within ten days after . . . [its] decision . . . give written notice thereof to the applicant. A person may appeal to the appellate tax board within thirty days after receiving the notice . . . or . . . after the time when the application for classification is deemed to be refused . . . [by failure of the commission to act within twenty days from the date of the application]. The decision of the board shall be binding upon the parties to any proceeding pending or brought before it which involves a tax for the year to which the decision is applicable. For the purposes of this section, 'person' shall include a board of assessors." See G. L. c. 58A, §§ 6 and 13, as amended.

[2] Section 5, Sixteenth, applies here in the form in which it was rewritten by St. 1957, c. 541. Section 5, Sixteenth (5), provides that the "classification by the commissioner, the commission or the . . . board, as the case may be, of a corporation as . . . a domestic manufacturing corporation . . . shall be followed in the assessment . . . of machinery used in the conduct of the business."

[3] Chapter 63, § 38C (as amended through St. 1937, c. 383, § 1; see later amendment by St. 1964, c. 723, § 3), reads in part, "Every corporation *organized under or subject to . . . [c. 156]* which is engaged in manufacturing shall, for the purposes of this chapter, be deemed to be a domestic manufacturing corporation. Every domestic manufacturing corporation shall be taxed in the same manner . . . as a domestic business corporation, except in so far as the determination of the excise under this chapter may be affected by reason of the exemption from local taxation of the machinery of a domestic manufacturing corporation" (emphasis supplied).

chinery used in manufacture'' is subject to local taxation if owned by a Massachusetts corporation subject to taxation under c. 63 other than a domestic business corporation (as that term is defined in G. L. c. 63, § 30) or a domestic manufacturing corporation (fn. 3). See § 5, Sixteenth (2), concerning the local taxation of the ''machinery used in the conduct of the business'' of a domestic business corporation as defined in c. 63, § 30.

The company prior to 1964 had been classified as a ''domestic manufacturing corporation.'' The assessors did not receive from the Commissioner prior to April 1, 1964, a list of the corporations subject to taxation, as required by G. L. c. 58, § 2 (fn. 1). Accordingly, to protect their right to a review by the State Tax Commission under § 2, the assessors applied on April 15, 1964, for such a review of the company's classification, and asked the commission to classify the company as a public utility corporation.

On May 2, 1964, the commission notified the assessors in writing that no change of classification would be made. On May 28, 1964, the assessors filed with the board a petition for review of this classification.[4] The company was allowed to intervene as a party appellee before the board. It filed on June 22, 1965, a motion to dismiss the assessors' petition as moot. The board granted the motion on September 14, 1965, and by order dismissed the assessors' petition as moot. The assessors appealed.[5]

---

[4] The assessors in their petition to the board took the position (a) that the company was not a ''domestic manufacturing corporation'' because it (see fn. 3) was not ''organized under or subject to'' G. L. c. 156, and (b) that it was in fact an ''electric company'' subject to G. L. c. 164. Accordingly, the assessors contend that the company is subject to local taxation on its machinery used in manufacture. See G. L. c. 59, § 5, Sixteenth (1). We, of course, need not now pass upon this substantive contention. The only question before us is whether the board correctly held that the issues raised by the assessors' petition had become moot.

[5] Additional facts, which do not appear to be disputed, are recited in the company's motion before the board to dismiss the assessors' petition. On December 11, 1964, the assessors (see G. L. c. 59, § 75, as amended through St. 1946, c. 339) assessed a tax upon the company's ''machinery used in manufacture'' as property ''omitted from the annual assessment of taxes.'' On January 29, 1965, the company paid under protest the tax thus assessed. On March 10, 1965, it applied to the assessors for an abatement of that tax (see G. L. c. 59, § 59, as amended through St. 1963, c. 125; see also later amendment by St. 1965, c. 615, § 2) in its entirety. The assessors, by failure to act upon the application, have in effect denied it. We assume that the company by now has appealed to the board.

The company relies, as did the board, on a supposed analogy of this case to certain cases arising under G. L. c. 59, § 39 (as it read when the cases were decided), dealing with the valuation of the property of telephone companies for taxation. See *Commissioner of Corps. & Taxn.* v. *Assessors of Springfield,* 329 Mass. 419; *Assessors of Springfield* v. *New England Tel. & Tel. Co.* 330 Mass. 198; *Commissioner of Corps. & Taxn.* v. *Assessors of Springfield,* 330 Mass. 433, 436 (which states that the statute, § 39, regulating the tax valuation of telephone company property had been adopted largely "to avoid . . . difficulties . . . from the inconsistent local assessment of fragments of larger systems," a problem not present in cases under c. 58, § 2). See also *Commissioner of Corps. & Taxn.* v. *Assessors of Haverhill,* 330 Mass. 553; *State Tax Commn.* v. *Assessors of Haverhill,* 331 Mass. 306, 309; *State Tax Commn.* v. *Assessors of Springfield,* 331 Mass. 677; *State Tax Commn.* v. *Assessors of Haverhill,* 331 Mass. 685; *Assessors of Haverhill* v. *New England Tel. & Tel. Co.* 332 Mass. 357. In reaching its decisions in the telephone cases, this court necessarily read together c. 59, §§ 39 and 73, as they then stood.[6] Section 39, as theretofore amended, directed (a) the Commissioner to determine each year the valuation of specified tangible property of each telephone company and to certify that value to local assessors, and (b) the assessors to assess that property at the Commissioner's valuation as certified (or as modified, see c. 59, § 39, by the board upon appeal). Section 73, as then amended, provided that any company aggrieved by the taxes assessed on it under § 39 might apply to the Commissioner for an abatement "on or before" December 1 of the year to which the tax related.[7] This court held in the *Springfield* case reported in

---

[6] Section 73 was repealed by St. 1955, c. 344, § 2. See discussion in Pike and Cohen, Annotations to Nichols' Taxation in Massachusetts, pp. 41–42, 53.

[7] This court noted in the cases reported at 330 Mass. 433, 437, and 331 Mass. 677, 681, various practical problems which might arise from the somewhat obscure provisions of §§ 39 and 73, as they read prior to later amendments (see fn. 6). If possible, we should interpret wholly different sections (c. 58, § 2; c. 59, § 5, Sixteenth, and § 59) in a manner which will avoid comparable difficulties.

329 Mass. 419, 421–422, that it was contemplated that an aggrieved telephone company should be in a position to apply under § 73 for an abatement not later than December 1 of the year to which the tax related and that the Commissioner should be in a position to act on that application when and if made.[8]   This, of course, presupposed that the assessors would make an assessment prior to December 1. It was pointed out that, to permit them to make a later assessment if the board had not acted by December 1 of the year to which the tax related, would in effect cause § 73 and the Commissioner's function under it to "become a dead letter."   The result of the decision was that, unless revision of the Commissioner's valuation became final prior to December 1, an assessment could be made only at the Commissioner's original valuation.   Any later change in the valuation by the board or by this court would be totally ineffective.   Thus after December 1, any pending proceedings under § 39 before the board (or before this court on appeal) were determined to be moot.   The later telephone cases supported in various respects, which need not here be stated in detail, (1) the requirement that the board valuation action be completed before December 1, if a valid assessment except at the Commissioner's original valuation figure was to be made, and (2) the view that (in the light of the relationship between §§ 39 and 73, as they then stood) an assessment (at a figure higher than the Commissioner's original valuation) made prior to December 1 of the tax year could not be retroactively validated by a board decision after December 1.   See, e.g., the cases reported at 329 Mass. 419, 422; 330 Mass. 198, 204; 330 Mass. 433, 436; 331 Mass. 306, 309.

The telephone cases do not control the present case, which is governed by different statutory provisions.   Under c. 58. § 2, and c. 63, § 38C, whether a corporation may be classified as a domestic manufacturing corporation depends upon whether it in fact (a) is engaged in manufacturing and

---

[8] The court indicated (p. 422) that, in any event, an assessment under § 39 could not be made by "an assessment [pursuant to c. 59, § 75] of omitted property after December 20" of the year to which the tax related.

(b) is incorporated under or subject to G. L. c. 156. If the corporation is not a domestic manufacturing corporation, the assessors (as already noted) have statutory authority to assess its machinery used in manufacture. Chapter 58, § 2, provides a carefully stated method of reviewing (upon evidence of the actual facts concerning the taxpayer's incorporation and operations) the correctness of the Commissioner's and the assessors' views.

In the telephone tax cases, for reasons stated in those decisions, statutory provisions required this court to treat the completion, prior to December 1 of the tax year, of the board's review of the Commissioner's valuation as a condition precedent to any higher assessment by the assessors. In classification cases arising under c. 58, § 2, no practical reasons and no statutory language compel us to treat completion of the appeal procedure as a condition precedent to an assessment. If the assessors disagree with the Commissioner and appeal from his classification, the assessors are not prohibited by statute from assessing the corporation (as was done in this case, see fn. 5), in accordance with their view of the correct classification, at least at any time prior to the last day (December 20 of the year to which the tax relates) for an "omitted" assessment under c. 59, § 75. The assessed corporation may then seek an abatement under c. 59, § 59, and have the assessors' action reviewed by the board.[9] Whether the facts warrant the classification will be determined in an orderly manner in the appeal under c. 58, § 2, by the board or upon appeal from the board to this court. Any tax incorrectly assessed, or assessed at an excessive valuation, may be abated in the abatement proceedings under c. 59, § 59. The corporation may protect itself from any additional excise under c. 63 which may result from an adverse decision upon the classification issue,

---

[9] Under the State Administrative Procedure Act, G. L. c. 30A, § 10 (enacted in 1954 after the decisions in the telephone tax cases discussed above), the assessors, the corporation, or the Commissioner may be given appropriate opportunity to intervene before the board in either the proceedings relating to the classification or those concerning the local assessment, if not already party thereto.

by seeking abatement under the appropriate provisions of c. 63.

There is thus no such necessary or practical interdependence between the commission's classification, the local assessment, and abatement relief therefrom, as was found in the telephone cases to exist between the Commissioner's (or the board's) valuation, the local assessment, and the telephone company's statutory right to seek abatement of that assessment. We do not regard c. 59, § 5, Sixteenth (5), see fn. 2, as requiring that the classification be finally determined before an assessment, but merely as providing that its final determination shall govern the local taxation of corporate machinery used in manufacture. Cf. *Assessors of Springfield* v. *New England Tel. & Tel. Co.* 330 Mass. 198, 201; *State Tax Commn.* v. *Assessors of Haverhill,* 331 Mass. 306, 309.

Certain additional considerations support an interpretation of the classification procedure under c. 58, § 2, and related taxing provisions in a manner which will permit completion of the procedure. (1) Completion of the procedure under § 2 (which involves a petition to the board and possibly also an appeal to this court) may necessitate trial of complicated issues of fact and consume a considerable period of time. It would take clear statutory language to lead us to the conclusion that the Legislature intended to require dismissal of fair, carefully designed, remedial proceedings merely because the proceedings are not completed within the tax year. (2) Changes in the facts affecting a particular corporation's classification are not likely to take place from year to year. The completion of the classification procedure is thus likely to afford strongly persuasive guidance to the Commissioner and to assessors in later years. This practical consideration may shed light on the probable legislative purpose. (3) It is of some significance that, in three cases before this court, appeals under § 2 were not treated as moot (although the decisions do not discuss the issue) after the close of the taxable year to which the classification related. *Commissioner of Corps. & Taxn.* v.

*Assessors of Boston,* 321 Mass. 90 (1947 decision concerning 1945 classification). *Assessors of Boston* v. *Commissioner of Corps. & Taxn.* 323 Mass. 730. *Commissioner of Corps. & Taxn.* v. *Assessors of Boston,* 324 Mass. 32 (1949 decisions on 1947 classification).

We conclude that c. 58, § 2, and related sections should not be narrowly interpreted by analogy to cases under different statutes (see fn. 6), long since changed and clarified, which relate to the very special problem of consistent local taxation of the tangible property of telephone systems. Any conclusion that classification proceedings necessarily become moot in the event that appeals under § 2 are not completed by December 20 of the tax year would frustrate the legislative intention, revealed in § 2 (and by its amendment by St. 1941, c. 726, § 2; see 1941 House Doc. No. 3), to give to assessors, and any affected corporation, a fair chance to test before the board the correctness of the Commissioner's classification.

The decision of the Appellate Tax Board is reversed. The case is remanded to the board for consideration of the assessors' petition upon the merits and for further proceedings consistent with this opinion.

*So ordered.*