TENNECO INC. *vs.* COMMISSIONER OF REVENUE.

Suffolk. November 6, 1987. — December 24, 1987.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Taxation*, Appellate Tax Board: findings; Corporation; Gas pipeline; Franchise tax; Excise. *Administrative Law*, Substantial evidence. *Constitutional Law*, Taxation, Equal protection of laws. *Due Process of Law*, Taxation. *Words*, "Utility corporation."

Substantial evidence in the record of a tax abatement proceeding supported a finding by the Appellate Tax Board that a certain corporate taxpayer was a utility corporation, notwithstanding the diverse activities of its nonutility subsidiary companies, subject to tax on its net income as a utility under the utility franchise provisions of G. L. c. 63, § 52A, and not as a business corporation under G. L. c. 63, §§ 30-42B. [383-386]

There was no violation of a utility corporation's Federal constitutional right to due process of law on the ground that the Commissioner of Revenue had improperly included in its net income dividends paid to it by its nonpipeline subsidiaries operating outside the Commonwealth, where ample evidence of a rational relationship existed between the dividend income of the utility's nonpipeline subsidiaries and the value of the corporation within the Commonwealth. [386-387]

Although the single-factor formula under G. L. c. 63, § 52A(3), for apportionment of the net income earned by a pipeline corporation doing business both within and without the Commonwealth allegedly resulted in taxation of income which did not have its source within the Commonwealth, taxation of such income under § 52A did not violate the Federal due process clause and Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution, in the absence of proof by clear and cogent evidence that the income attributed to the Commonwealth was in fact out of all appropriate proportion to the business transacted in the Commonwealth, or had led to a grossly distorted result. [387-388]

A utility corporation's inability to use the alternative method of apportionment of net income from business in the Commonwealth available only to business corporations under G. L. c. 63, § 42, did not violate the equal protection clause of the Federal Constitution, since utility corporations may utilize the abatement procedure in G. L. c. 62C, § 37, to seek relief from disproportionate allocation of their net income under G. L. c. 63, § 52A. [388]

Double taxation of a utility corporation's net income did not occur when dividends received from its three foreign subsidiaries that paid corporate excise taxes in Massachusetts were included in the corporation's net income under G. L. c. 63, § 52A, for the tax years 1977-1979 where, although the excise tax calculated under § 52A reflected dividend earnings of subsidiaries which had been taxed separately under a different statute, the excise tax was imposed solely to tax the corporation for the privilege of doing business in Massachusetts and not upon the individual items used to calculate that figure. [388-389]

APPEAL from a decision of the Appellate Tax Board.

*Philip Burling (Joseph Halpern* with him) for the taxpayer.

*Lisa A. Levy,* Assistant Attorney General, for the Commissioner of Revenue.

NOLAN, J. Tenneco Inc. appeals from a decision of the Appellate Tax Board (board) affirming the refusal of the Commissioner of Revenue (Commissioner) to abate additional taxes assessed against Tenneco pursuant to G. L. c. 63, § 52A, for the years 1977, 1978, and 1979. Tenneco claims that various conclusions of the board were erroneous as a matter of law, and that its decision violates Tenneco's State and Federal constitutional rights to due process and equal protection. We affirm the board's decision.

Tenneco Inc. is a Delaware corporation which has been certified to do business in Massachusetts since 1954. Since that time, Tenneco has filed Massachusetts public service corporation franchise tax returns under G. L. c. 63, § 52A. Following a review of Tenneco's tax returns, the Commissioner assessed additional franchise taxes against the corporation for the years 1977-1979 totalling $1,998,624. The additional taxes stemmed from the Commissioner's determination that Tenneco should have included as taxable income dividends totalling more than one billion dollars received from its nonutility subsidiary companies over the three years in issue.

Tenneco filed written applications to the Commissioner for abatement of the additional tax assessments. A hearing on the applications was held before the Commissioner's appeal and review bureau. Tenneco argued at the hearing that, in view of its diverse business operations, only its pipeline division should

be taxed under the utility franchise provisions of G. L. c. 63, § 52A, and its four other nonpipeline divisions should be taxed as a business corporation under G. L. c. 63, §§ 30-42B. Tenneco urged the Commissioner to reclassify it as either a business corporation or a "hybrid" corporation for the purposes of determining its tax liability.

The Commissioner denied Tenneco's applications and refused to abate the taxes assessing, in addition, interest, late payment penalties, and demand charges. The corporation remitted a total of $2,793,881.69, representing full payment of the taxes plus penalties and charges, and then filed timely petitions appealing the Commissioner's decision to the board. The board found that Tenneco was a utility corporation notwithstanding the diverse activities of its other divisions and held that Tenneco was subject to tax on its net income as a utility and not as a business corporation. Tenneco filed a timely notice of appeal.

The company, now known as Tenneco Inc., was incorporated in 1943 as Tennessee Gas and Transmission Company (Tennessee Gas) for the purpose of constructing an interstate natural gas pipeline. In the decade that followed, the company expanded considerably by acquiring two additional pipeline companies and by enlarging its original system. By 1954, Tennessee Gas obtained a certificate of foreign corporation registration to do business in the Commonwealth. Since that time, the corporation has grown into a diversified, international conglomerate with interests and products in a variety of industries including: integrated oil and gas operations; natural gas pipelines; construction and farm equipment; chemicals; automotive parts; shipbuilding; agriculture and land management; packaging; and insurance.

Throughout the period that Tenneco conducted business in the Commonwealth, including the years 1977-1979, the company filed its tax returns as a utility corporation and not as a business corporation, using a Massachusetts public service corporation franchise tax return under G. L. c. 63, § 52A, rather than a foreign business or manufacturing corporation excise tax return. See G. L. c. 63, §§ 30-39. During the years in question, the statutory scheme for the taxation of business

corporations differed in four pertinent respects from the scheme for taxing utility corporations: (1) In calculating net income, a business corporation was allowed to deduct dividends received from any corporation in which it owned at least 15% of the voting stock, whereas utility corporations could only deduct dividends received from certain other utility corporations; (2) business corporations were taxed at a rate of 8.33%; utilities were taxed at the lesser rate of 6.5%; (3) business corporations allocated their net income by apportionment based on three factors: income, property, and employment; a utility's net income was based solely on property holdings; (4) a business corporation had the right to apply for an alternative apportionment of its income allocable to Massachusetts; a utility did not.

From the date of the filing of its first return in the Commonwealth, through and including 1979, Tenneco computed its taxes as a utility corporation doing business in Massachusetts. Accordingly, the company allocated its net income pursuant to the single factor utility formula, taking advantage of the lower 6.5% franchise tax rate. However, acting as if it were a business corporation, Tenneco claimed deductions for dividends received from all its subsidiaries including nonutility divisions. After reviewing these returns, the Commissioner assessed a deficiency in the corporation's tax liability based on the disallowance of Tenneco's deductions for nonutility dividends in the following amounts: $606,912 for 1977, $658,494 for 1978, and $730,218 for 1979. The ruling was affirmed by the board.

A decision of the board will only be disturbed if it was not supported by "substantial evidence," or was tainted by an error of law. See *Towle* v. *Commissioner of Revenue*, 397 Mass. 599, 601-602 (1986); *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981). See also G. L. c. 58A, § 13 (1986 ed.). General Laws c. 30A, § 1 (6) (1986 ed.), defines substantial evidence as "such evidence as a reasonable mind might accept as adequate to support a conclusion." See *New Boston Garden Corp.*, *supra*, quoting *Boston Edison Co.* v. *Selectmen of Concord*, 355 Mass. 79, 92 (1968). In deter-

mining whether the board's decision was supported by substantial evidence, we consider the entire record. However, a finding of the board will not be set aside unless "the evidence points to no felt or appreciable probability of the conclusion or points to an overwhelming probability of the contrary." *New Boston Garden Corp.*, *supra*, quoting L.L. Jaffe, Judicial Control of Administrative Action 598 (1965).

Tenneco argues that its corporate activities have become so diverse that only a portion of those activities may properly be classified as utility related. Therefore, the company asserts, it should be taxed as a business corporation, or, at a minimum, its nonutility operations should be taxed under c. 63. Relying on *Assessors of Holyoke* v. *State Tax Comm'n*, 351 Mass. 394 (1966), Tenneco claims that the board erred in failing to exercise its authority to reclassify the corporation for tax purposes. The company insists that, had the board considered the evidence, it could not have properly concluded that Tenneco should be taxed as a utility under § 52A. The board, however, properly distinguished Tenneco's claim from the facts of *Assessors of Holyoke* by pointing out that the Holyoke Water Power Company had been classified as a manufacturing corporation by the Commissioner under G. L. c. 58, § 2, and that this court followed the plain language of c. 59, § 5, Sixteenth, in ruling its machinery exempt from local taxation. Tenneco has not been so classified.

Tenneco attempts to include itself in the same class as the water power company on the basis that each corporation is involved in "cross strains of business and utility" activities. As evident from the board's ruling noted above, however, the status of the Holyoke Water Power Company was, by legislative decree, readily distinguishable from Tenneco's position.

The board rested its determination that Tenneco is properly classified as a utility on the plain language expressed in the applicable sections of c. 63.[1] These statutory provisions are

---

[1] As applicable to the issues, § 52A reads: "Every utility corporation doing business within the commonwealth shall pay annually a tax upon its

neither vague nor ambiguous and provide no basis to conclude
that a foreign utility doing business in the Commonwealth

corporate franchise in accordance with the provisions of this section.
"(1) When used in this section, the following terms shall have the follow-
ing meanings:
"(a) 'Utility corporation' means . . . (viii) every domestic or foreign
pipeline corporation engaged in the transportation or sale of natural gas
within the commonwealth . . . .
"(b) 'Net income' means the gross income from all sources, without
exclusion, other than dividends from investment in such other utility corpo-
rations which represent eighty per cent or more of the voting stock thereof,
for the taxable year, less the deductions, but not credits, allowable under
the provisions of the Federal Internal Revenue Code, as amended and in
effect for the taxable year. Deductions with respect to the following items,
however, shall not be allowed: (i) dividends received . . . ."
After the computation of net income as set forth above, the amount
allocable to Massachusetts is determined as set forth in § 52A (3), inserted
by St. 1951, c. 641, § 1, which reads: "The portion of net income of a
. . . pipe line . . . corporation allocable to the commonwealth shall be such
percentage of its total net income as the cost of its plant, property and
equipment within the commonwealth as shown by its books of account
bears to the cost of its total plant, property and equipment."
General Laws c. 63, § 52A (1986 ed.), further provides: "(2) . . . Every
utility corporation doing business both within and without the common-
wealth shall pay annually a tax upon its corporate franchise equal to six
and one-half per cent of that portion of its net income during the taxable
year as is allocable to the commonwealth. . . . (4) Any taxes assessed upon
any utility corporation pursuant to this section shall be in lieu of any and
all other taxes under this chapter."
General Laws c. 63, § 38 (1986 ed.), for the years at issue, reads: "The
commissioner shall determine the part of the net income of a domestic
business corporation or of a foreign corporation derived from business
carried on within the commonwealth as follows: "(a) Net income as defined
in [c. 63, § 30] adjusted as follows shall constitute taxable net income: (1)
Dividends included therein shall be deducted other than dividends from or
on account of the ownership of:
"    . . . .
"(*iii*) any class of stock, if the corporation owns less than fifteen per cent
of the voting stock of the corporation paying such dividend.
"    . . . .
"(*c*) If the corporation has income from business activity which is taxable
both within and without this commonwealth, its taxable net income, deter-
mined under the provisions of subsection (*a*), shall be apportioned to this
commonwealth by multiplying its taxable net income, determined under
the provisions of subsection (*a*), by a fraction, the numerator of which is
the property factor plus the payroll factor plus twice the sales factor, and
the denominator of which is four."
General Laws c. 63, § 39 (*a*) (2) reads: "Eight and thirty-three one hun-
dredths per cent of its net income determined to be taxable in accordance
with the provisions of this chapter."

through both utility and nonutility divisions must be taxed as a business or "hybrid" business corporation. Rather, consistent with the definition of the term utility corporation as including any "foreign pipe line corporation engaged in the transportation or sale of natural gas," the correct conclusion is that Tenneco was a utility corporation within the meaning of § 52A, irrespective of its business activities conducted outside the Commonwealth. This determination is supported by the undisputed facts that, for the tax years at issue, Tenneco conducted substantial natural gas transmission in Massachusetts through its pipeline division and filed public service corporation franchise tax returns, applied the lower utility tax rate, and utilized the single-factor apportionment formula provided under § 52A.

Tenneco also raises State and Federal constitutional claims that the inclusion in its net income of dividends paid to it by its nonpipeline subsidiaries operating outside the Commonwealth violated its equal protection and due process rights. Specifically, Tenneco claims that no reasonable connection exists between the value of its interstate business interests and the company's activities within the Commonwealth. The requisite nexus between the interstate activities of the corporate taxpayer and the taxing State is established once "the corporation avails itself of the 'substantial privilege of carrying on business' within the State." *Mobil Oil Corp.* v. *Commissioner of Taxes of Vt.*, 445 U.S. 425, 437 (1980). Indeed, Tenneco concedes that it carries on a substantial volume of income-producing business in the Commonwealth selling natural gas, petroleum products, and automotive parts. Nor does it deny that revenues are produced in this State by the operation of its separate divisions and subsidiaries. Tenneco does not dispute that these activities are subject to taxation. It attempts to distinguish its out-of-State dividends, however, by characterizing them as a separate taxable event immune from State tax. The argument cannot succeed unless Tenneco establishes that those dividends were not rationally related to the value of the corporation's activities in the Commonwealth. *Container Corp. of America* v. *Franchise Tax Bd.*, 463 U.S. 159, 165-166 (1983). The mere labelling of the source of dividend income as foreign

does not preclude a State from including that income in the preapportionment tax base. *Mobil Oil Corp., supra* at 440.

Tenneco failed to demonstrate, before the board, the absence of a rational relationship between the dividend income from its nonpipeline subsidiaries and values connected with its Massachusetts operations. By contrast, a review of Tenneco's enterprise reveals the interrelatedness of its major industries. Tenneco's oil and gas operations are integrated, and its activities involve the exploration and production of natural gas which is transported to Massachusetts and sold. In addition, Tenneco has conceded that, for the years at issue, it generated revenues within the Commonwealth through the nonpipeline business operations of two of its divisions. These divisions supervised the operations of Tenneco's subsidiaries engaged in the production of automotive parts and petroleum products. These subsidiaries contributed significantly to the dividends paid to Tenneco. Also, three subsidiaries of Tenneco Corporation, a holding company, generated significant revenues within Massachusetts for the three years at issue.

Because ample evidence of a rational relationship exists between the dividend income of Tenneco's nonpipeline subsidiaries and the value of the corporation within Massachusetts, inclusion of the dividend income in the preapportionment tax base did not violate due process.

Tenneco also raises the constitutional claims that taxation under the utility franchise statute violates the Federal due process clause and Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution. Tenneco alleges that § 52A's one-factor income apportionment formula creates an apportionment not justly attributable to its operations in the Commonwealth.

In the tax years 1977-1979, § 52A (3) provided that a pipeline corporation doing business both within and without the State must allocate to the Commonwealth a portion of its net income equal to the "percentage of [the corporation's] total net income as the cost of its plant, property and equipment within the commonwealth as shown by its books of account bears to the cost of its total plant, property and equipment."

The United States Supreme Court will not invalidate as unconstitutional an apportionment formula because it may result "in taxation of some income that did not have its source in the taxing State." *Moorman Mfg. Co.* v. *Bair*, 437 U.S. 267, 272 (1978). Rather, the Constitution will only bar a formula-produced assessment when "the taxpayer has proved by 'clear and cogent evidence' that the income attributed to the State is in fact 'out of all appropriate proportions to the business transacted in that State,' . . . or has 'led to a grossly distorted result.' " *Id.* at 274, quoting *Hans Rees' Sons* v. *North Carolina ex rel. Maxwell*, 283 U.S. 123, 135 (1931) and *Norfolk & W. Ry.* v. *Missouri State Tax Comm'n*, 390 U.S. 317, 326 (1968).

The Court has held that a single-factor formula for apportionment of a corporation's net income to a taxing State is "presumptively valid." *Moorman Mfg. Co., supra* at 273. Such a formula "does not purport to identify the precise geographical source of a corporation's profits; rather, it is employed as a rough approximation of a corporation's income that is reasonably related to the activities conducted within the taxing State." *Id.* The fact that the single-factor formula results in taxation of income which does not have its source within the Commonwealth does not invalidate the statutory taxing scheme.

Tenneco's inability to seek an alternative apportionment of its net income under G. L. c. 63, § 42, for the years at issue did not violate the equal protection clause. The challenged taxing scheme did not discriminate against utility corporations, including Tenneco, since such corporations were able to utilize the abatement procedure in G. L. c. 62C, § 37, to seek relief from disproportionate allocation of their net income. under § 52A.

Finally, Tenneco argues that the disallowance of the deduction for dividends from its nonpipeline subsidiaries violates the policy of avoiding double taxation of corporate income. Tenneco claims that double taxation occurred when the dividends received from its three subsidiaries that paid corporate excise taxes in Massachusetts were included in the corporation's net income under § 52A for the tax years 1977-1979.

Tenneco contends that § 52A should apply only to "pure" utility companies and not to corporations with diversified utility and nonutility activities in order to avoid double taxation of corporate income. This assertion, however, contravenes the plain language of § 52A. Included in the definition of a "utility corporation" under § 52A are not only pure utilities, but also any foreign pipeline corporation that transports or sells natural gas within the Commonwealth. The definition of "net income" in § 52A, includes gross income from all sources, "without exclusion."

Although the excise tax base calculated under § 52A reflects dividend earnings of subsidiaries which have been taxed separately under a different statute, double taxation does not occur because the excise tax is imposed solely to tax Tenneco for the "privilege of the carrying on or doing business . . . [in the Commonwealth] and not upon the individual items used to calculate that figure." *Commissioner of Revenue* v. *Massachusetts Mut. Life Ins. Co.*, 384 Mass. 607, 618 (1981).

The board properly classified Tenneco as a utility corporation subject to taxation under G. L. c. 63, § 52A. There was no error in the board's decision affirming the Commissioner's assessment of additional franchise taxes plus interest, penalties, and demand charges; nor is there merit in Tenneco's claims of constitutional error. The decision of the Appellate Tax Board is affirmed.

*So ordered.*