PMAG, Inc. *vs.* Commissioner of Revenue.

Suffolk. December 10, 1998. - February 18, 1999.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Taxation,* Corporate excise, Abatement, Federal change statute. *Statute,* Construction.

The appellate tax board correctly concluded that the Commissioner of Revenue properly assessed, pursuant to G. L. c. 62C, § 30, additional taxes due under G. L. c. 63, upon a taxpayer's notification under G. L. c. 62C, § 30, of a change in Federal taxable income for the years 1982-1985 [37-40], and G. L. c. 62C, § 30, was clear and unambiguous with respect to its applicability in the circumstances [40, 40-41].

Where a taxpayer had received, five months before the actual assessment, notice of the intent of the Commissioner of Revenue to assess taxes and had an opportunity to contest the assessment, revised notices of intention, reflecting the amount of adjusted taxes paid by the taxpayer in anticipation of assessment, and issued less than thirty days before the assessment, did not affect the validity of the assessment. [41-43]

Appeal from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for direct appellate review.

*William E. Halmkin* (*Ronald Garmey* with him) for the taxpayer.

*Thomas K. Condon* for Commissioner of Revenue.

Abrams, J. The taxpayer, PMAG, Inc., appeals from a decision of the Appellate Tax Board (board) denying its application for abatement of corporate excise taxes assessed by the Commissioner of Revenue (commissioner) for the years 1982, 1983, 1984, and 1985. We granted the taxpayer's application for direct appellate review. We affirm the board's decision.

The facts of this case are largely undisputed. During the years 1982 through 1985, the taxpayer, incorporated in Delaware, had its principal place of business in Massachusetts. The taxpayer designed, distributed, and sold athletic footwear. The taxpayer's voting stock was owned by a German national,

Armin Dassler. All the nonvoting common stock was owned by a German limited partnership. Dassler was the sole general partner of the partnership. During the years in question, the taxpayer filed Massachusetts foreign business or manufacturing corporation excise returns Form 355B. During the late 1980's, the Internal Revenue Service (IRS) conducted audits of the taxpayer for the years 1982 through 1987. The IRS proposed adjustments to the taxpayer's net income, resulting in part from the disallowance of deductions for certain commissions paid by the taxpayer to the partnership.[1] After administrative review, the taxpayer agreed to an increase of its Federal taxable income for the years 1982 through 1985. I.R.C. § 482. The increases in the taxpayer's income resulting from the disallowance of certain deductions were $2,850,400 for 1982; $3,036,830 for 1983; $3,735,024 for 1984; and $5,266,256 for 1985. In computing the taxpayer's Federal income taxes, however, the effect of the adjustments was negated largely because of the net operating loss (NOL) generated by the taxpayer in 1986 and applicable to the 1983, 1984, and 1985 tax years.[2]

In December, 1991, the taxpayer filed Massachusetts tax Form 355FC, report of change with respect to Federal net income, for the 1982 through 1985 tax years, showing an adjustment to the Federal income originally reported. These forms listed changes in net income from $0 to $3,783,654 in 1982; from $0 to $4,622,872 in 1983; from a loss of $2,451,923 to a gain of $2,451,923 in 1984; and from $143,245 to $5,192,245 in 1985. However, each form indicated that no additional tax was due, as the taxpayer claimed that the Federal change did not affect the Massachusetts taxes.

The commissioner proposed to assess additional excise taxes, because of changes in Federal taxable income for each of the years in question, and issued notices of intention to assess (NIA), dated July 27, 1992. The assessment was based on the rationale that, although the Federal tax liability did not change because of the net operating loss, similar deductions were not allowed in Massachusetts for the years in question. G. L. c. 63, § 30. After a conference, the commissioner notified the taxpayer

---

[1]The Internal Revenue Service (IRS) viewed "buying agency commissions" paid to the partnership as excessive and sought to treat them as nondeductible distributions rather than as deductible commissions.

[2]The changes imposed by the IRS resulted in significant tax benefits for the taxpayer in Germany.

of his decision to proceed with the assessment pursuant to the NIA. The taxpayer requested and was denied a hearing at the appeal and review bureau. On November 16, 1992, the taxpayer paid $3,018,195.83, the amount of the tax due and statutory additions according to the NIA, in "partial payment of [the taxpayer's] proposed tax liability." Shortly after receipt of the payment, the commissioner issued a revised NIA, also dated July 27, 1992, reflecting the above payment, deleting a penalty of $100 included in the original NIA, and adding statutory interest for the four years totaling $1,837.51. On November 30, 1992, the taxpayer paid the additional amount listed on the revised NIA.

On December 30, 1992, the commissioner issued a notice of assessment, stating that, on December 5, 1992, he had assessed additional taxes consistent with the NIA issued on July 27, 1992. The taxpayer filed applications for abatement. The request for abatement was denied, and the taxpayer filed a petition for review with the board on December 20, 1993. See G. L. c. 62C, § 39. After hearing, the board denied the taxpayer's request, concluding that the assessment was proper.

1. *Taxpayer liability.* The taxpayer asserts that the board's decision, holding that the commissioner acted properly under G. L. c. 62C, § 30[3] (Federal change statute), was based on an erroneous application of the law, and therefore must be reversed. We conclude that the decision of the board was correct. See

---

[3]General Laws c. 62C, § 30, provides, in pertinent part: "If the taxable income of a person subject to taxation under [c. 63] is finally determined by the federal government to be different from the taxable income as originally reported, such final determination, shall be reported, accompanied by payment of any additional tax due with interest as provided in [§ 32], to the commissioner within three months of receipt of notice of such final determination. . . . The report shall include a statement of the reasons for the difference in such form as the commissioner may require. If from such report or upon investigation it shall appear that . . . the tax with respect to income under [c. 63] has not been fully assessed, the commissioner shall, notwithstanding the three-year limitation in [§ 26], assess an additional tax, if any, with respect thereto, with interest as provided in [§ 32]. An assessment under this section shall be made in the manner provided in [§ 26] within one year of the receipt of such report or within two years of the receipt by the commissioner of information from the federal government that it has made a final determination of such person's federal taxable income or of the federal taxable estate different from that report where no report is filed with the commissioner and shall be limited to changes in such person's tax liability under [c. 63] . . . arising out of or related to the items which resulted in the change in federal taxable income or in the federal taxable estate."

*Tenneco Inc.* v. *Commissioner of Revenue*, 401 Mass. 380, 383 (1987).

The taxpayer first argues that the Federal change statute is merely a notice statute, requiring the taxpayer to notify the commissioner of any change in Federal taxable income. The taxpayer asserts that the statute does not give the commissioner power to assess taxes; rather, after notification of a change in income, the commissioner must determine whether there is any tax which has not been assessed under c. 63. Thus, the commissioner must have specific authority under c. 63 to assess the tax. Here the taxpayer contends that the commissioner lacked such authority. The taxpayer bases this argument on historical changes to the Federal change statute. Under the pre-1933 version of the change statute, a change in Federal taxable income automatically was reflected as a change in Massachusetts taxable income: the latter was defined by the former. However, the taxpayer argues, under the current statute, enacted in substantially its present form in 1933, St. 1933, c. 327, §§ 3-7, and amendments, Massachusetts taxable income is defined by reference to other provisions in G. L. c. 63, and is not defined by the Federal taxable income.

The taxpayer relies on language in *Screenprint, Inc.* v. *Commissioner of Revenue*, 4 Mass. App. Tax. Bd. Rep. 10, 12 (1983) ("language of the [Federal change statute] *permits* the Commissioner to determine whether a change by the federal government in taxable income results in a change in the Massachusetts tax, *and, if so*, to make an assessment based on such change" [emphasis added]).

As further evidence that the statute has changed, the taxpayer points to the process required for notice of intent to make an assessment. 830 Code Mass. Regs. § 62C.26.1(6)(a). The taxpayer suggests that, if the old version, which equated Massachusetts income with that which was listed on the Federal form, were still in place, the requirement for the commissioner to issue NIAs would be unnecessary. The taxpayer would know his Massachusetts liability once his Federal liability was determined. Therefore, the taxpayer concludes that the statute is simply a notice statute. We do not agree.

The Federal change statute operates as follows. First, a taxpayer must provide notice that the Federal taxable income as "finally determined by the Federal government" is different than originally reported. Second, the commissioner must

determine, from such report or an investigation, whether taxes under c. 63 have been assessed, and, if not, make an assessment accordingly. A change in Federal taxable income does not automatically result in a change in Massachusetts net income. Rather a change in net income occurs when the Federal change alters the tax due under c. 63. Third, the commissioner must assess the excise taxes in compliance with the procedures spelled out in G. L. c. 62C, § 26. G. L. c. 62C, § 30.

The board correctly determined that the Federal change statute authorizes the commissioner to assess the additional tax. Here, the taxpayer filed the proper report. The commissioner made a determination that the income as reported in the change forms was "different" from that which was originally reported. The commissioner then determined that additional tax was due for all the years in question.

The differences in income, as indicated on the change forms, warranted the assessment. The starting point for calculating the corporate excise tax in Massachusetts is Federal gross income. See *Polaroid Corp.* v. *Commissioner of Revenue,* 393 Mass. 490, 498 n.10 (1984). Massachusetts net income is defined as Federal gross income less the deductions, but not the credits allowable under the provisions of the Internal Revenue Code in effect for that year. G. L. c. 63, § 30. The Massachusetts net income is then used to determine the corporate excise tax due. G. L. c. 63, §§ 30, 39. For 1982, PMAG's Federal taxable income increased $3,783,654. This corresponded with the increase in PMAG's Massachusetts net income. For 1983, 1984, and 1985, similar increases in Federal taxable income were offset by 1986 NOLs for Federal tax purposes. Because Massachusetts does not recognize the NOLs for such purposes, the difference reported increased the Massachusetts net income. Once the net income increased, the tax liability increased. The commissioner made an assessment accordingly.

Contrary to the taxpayer's analysis, the board determined correctly that the Federal change statute provides sufficient authority on its face for the commissioner to make an assessment. The statute states that, if the commissioner determines that taxes due under c. 63 "have not fully been assessed, the commissioner shall . . . assess an additional tax." These words demonstrate that the provision is more than a notice statute. Those words are an affirmative grant of authority to assess a tax, consistent with a reported change, when the taxes due under c. 63 have not

been assessed. The statute "must be interpreted in accordance with the usual and natural meaning of the words." *Gillette Co.* v. *Commissioner of Revenue*, 425 Mass. 670, 674 (1997).

2. The taxpayer further argues that the Federal change statute only authorizes an assessment when the Federal taxable income "is finally determined by the Federal government to be different" from that which was originally reported. The taxpayer contends that, under the statute, the taxable income was not "different" for 1983, 1984, and 1985. Although the components of the income were altered, the final valuation of income under Federal law remained the same.

We disagree with this analysis. The board concluded correctly that a change in the "components" of the Federal income was sufficient to trigger the Federal change statute.[4] The narrow definition of "different" urged by the taxpayer was rejected by the board in *Screenprint, Inc., supra* at 12. In that case, the IRS changed the treatment of funds paid to shareholders from compensation to dividends. As in this case, the taxpayer argued that no "difference" existed because the change in classification did not affect the total amount of the taxpayer's Federal income. The board rejected that argument, concluding that the "difference" under the Federal change statute, was "that compensation was reclassified . . . as dividends." *Id.* The board stated that the statute was both clear and unambiguous and was not limited to changes in the final total amount of Federal income. See *id.*

3. The taxpayer next argues that, although the Federal income did in fact change for 1982, the commissioner had no authorization under c. 63 for changing his assessment for that year. For 1982, the IRS reallocated income between a corporation and a related partnership. I.R.C. § 482. According to the taxpayer, the commissioner's sole authority for imposing additional tax liability based on adjustments between related entities is G. L. c. 63, § 39A.[5] While that provision allows the commissioner to

---

[4]In determining that a difference existed, the board noted that, in the agreement between the taxpayer and the IRS, the taxpayer stipulated that, for the purposes of Federal income tax, its "taxable income should be increased" for the years in question.

[5]General Laws c. 63, § 39A, provides, in pertinent part: "The net income of a foreign corporation which is a subsidiary of another corporation or closely affiliated therewith by stock ownership shall be determined by eliminating all payments to the parent corporation or affiliated corporations in excess

make adjustments between related corporations, the commissioner had no power to reallocate income between a foreign partnership and a corporation. Allowing the commissioner to do so here would expand greatly his powers. Under this argument, the commissioner had no power to assess these taxes under c. 63.[6]

We reject that reading of the Federal change statute and conclude that the board properly applied the law. On its face, the Federal change statute authorizes the commissioner to make an assessment whenever a difference is reported and a determination is made that taxes due under c. 63 have not been assessed. The commissioner did not make an adjustment to any transaction, in conflict with G. L. c. 63, § 39A, and did not rely on that provision to assess the tax. Rather, he redetermined taxable income based on changes made by the Federal government with the taxpayer's approval. Once the proper income was determined by the Federal government, the commissioner concluded that the difference altered the taxpayer's liability for the years in question and assessed taxes accordingly. G. L. c. 62C, § 30.

4. *Taxpayer's procedural claims.* The taxpayer claims that the commissioner failed to follow the procedural requirements for assessing the taxes because he failed to give the taxpayer thirty days to contest the proposed assessment and seek a hearing. G. L. c. 62C, § 26b; 830 Code Mass. Regs. § 62C.26.1.

On December 23, 1991, the taxpayer filed Massachusetts Form 355FC, indicating the change in reported income for the 1982 through 1985 tax years. The commissioner issued NIAs, dated July 27, 1992. The taxpayer requested and was granted a conference, which took place on October 2. On October 9, the

---

of fair value, and by including fair compensation to such foreign corporation for all commodities sold to or services performed for the parent corporation or affiliated corporations. For the purposes of determining such net income, the commissioner may, in the absence of satisfactory evidence to the contrary, presume that an apportionment by reasonable rules of the consolidated net income of corporations participating in the filing of a consolidated return of net income to the federal government fairly reflects the net income taxable under this chapter, or may otherwise equitably determine such net income by reasonable rules of apportionment of the combined income of the subsidiary, its parent and affiliates or any thereof."

[6] As the taxpayer notes, this argument is equally applicable to the contention that the commissioner lacked authority to assess taxes for 1983, 1984, and 1985.

commissioner notified the taxpayer of his decision to proceed with the assessment pursuant to the NIAs. On November 16, 1992, the taxpayer paid $3,018,195.83, the amount of the tax and statutory additions as reported in the NIAs in "partial payment of [the taxpayer's] proposed tax liability." Shortly after receipt of the payment, the commissioner issued revised NIAs, also dated July 27, 1982, reflecting the November 16 payment, deleting a penalty of $100 included in the original NIAs, and adding statutory interest for the four years totaling $1,837.51. On November 30, 1992, the taxpayer paid the amount listed on the revised NIAs. On December 30, 1992, the commissioner issued a notice of assessment, stating that on December 5, 1992, he had assessed additional taxes consistent with the NIAs.

The taxpayer argues that an assessment cannot issue until thirty days from the date of the issuance of the NIAs. Here, the revised NIAs, though dated July 27, were issued sometime after the November 16 payment, as they reflected that payment had occurred. The second NIAs are the proper measuring point for the thirty-day requirement because they specifically state that they "superseded" the originals. Therefore, the earliest an assessment could have been issued was December 16, while the commissioner made the assessment on December 5. Proper notice, the taxpayer argues, is a condition precedent to a valid assessment. See generally *Upjohn Co.* v. *State Tax Comm'n*, 347 Mass. 281 (1964).

The board determined that the assessment was proper and that the issuance of the revised NIAs did not affect the validity of the assessment.[7] We agree. Revised NIAs are not contemplated in the statutes, regulations or administrative guidelines, and there is no requirement that revised NIAs be issued. See *Glandmore Café, Inc.* v. *Commissioner of Revenue*, 17 Mass. App. Tax. Bd. Rep. 15, 21 (1994). The revised NIAs did not affect the amount of the proposed tax; rather, they reflected payment, deleted penalties and added interest which accrued by operation of law. G. L. c. 62C, §§ 32, 33. Such interest and penalty assessments fall outside the procedural requirements of G. L. c. 62C, § 26 (*b*). The requirements of that section apply only to the assessment of original taxes. See *Fields Corner Plate & Glass Co.* v. *Commissioner of Revenue*, 16 Mass. App. Tax. Bd. Rep. 157, 161-162 (1994).

_____

[7] The assessment was made within one year of the taxpayer's filing of Form 355FC for the four years in question. G. L. c. 62C, § 30.

We conclude that the issuance of the revised NIAs did not constitute a separate notice of assessment and the commissioner was not required to wait thirty days until actually assessing the taxes. The taxpayer had notice that the commissioner intended to make an assessment and had the opportunity to contest that assessment.[8] Thus, the purpose of the statute was met. See *Glandmore Café, supra* at 21 (assessment valid where assessment occurred more than thirty days after original NIAs but less than thirty days after revised NIAs because the purpose of the statute was met). The revised NIAs contained the same assessment information as the originals. The additional information contained therein did not affect the substance of the assessment. Because the taxpayer received proper notice more than thirty days before the assessment and had the opportunity to contest the assessment, the assessment was valid.

*Decision of the Appellate Tax Board affirmed.*

---

[8]At oral argument, counsel conceded that the taxpayer was not harmed by the failure to wait until thirty days had passed from the issuance of the revised NIAs.