## RCN-BecoCom, LLC *vs.* Commissioner of Revenue & another.[1,2]

Suffolk. October 5, 2004. - January 6, 2005.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Commissioner of Revenue. Telephone Company. Taxation,* Appellate Tax Board: appeal to Supreme Judicial Court, Cable television system, Internet service provider, Personal property tax: machinery.

The appellate tax board (board) properly determined that a substantiality test (i.e., reviewing a company's entire operations to determine whether the activities in question are substantial or merely trivial or only incidental to its principal business), rather than an exclusivity test, was the appropriate standard for classifying a company as a telephone company under G. L. c. 59, § 39 (statute), for purposes of central valuation of the personal property of such companies to enable local assessors to issue their assessment of the respective companies' tax obligations to the corresponding locality [201-204], and the board's determination that the plaintiff, a provider of telephone, cable television, and Internet services, qualified as a telephone company under the statute was supported by substantial evidence regarding the plaintiff's receipts, proportionate income from telephone activities, percentage of capital investment, personnel, and business ratios [204-206].

In an appeal from a determination of the appellate tax board (board), the plaintiff, a limited liability company classified as a telephone company, was not exempt from taxation of its personal property (machinery, poles, wires and underground conduits, wire and pipes) by virtue of G. L. c. 59, § 5, Sixteenth, as that provision exempts corporations subject to taxation under G. L. c. 63, but not limited liability companies [206-207]; moreover, the board properly found that all of the plaintiff's personal property was subject to taxation, refuting the plaintiff's argument that certain of its machinery was immune from taxation pursuant to G. L. c. 59, § 18, First [208-209].

This court concluded that G. L. c. 59, §§ 39 and 41, contemplated the division of a telephone company's property into telephone and nontelephone property to determine whether the property should be centrally or locally valued for tax purposes, and that such division adhered to the remedial purposes of § 39. [209-211]

[1]The board of assessors of Newton.

[2]We acknowledge the amicus briefs of MCI Metro Access Transmission Services, LLC, and the City Solicitor and Town Counsel Association and the Massachusetts Municipal Association.

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for direct appellate review.

*William Hazel* for the taxpayer.

*Daniel A. Shapiro* for Commissioner of Revenue.

*Richard G. Chmielinski,* Assistant City Solicitor, for board of assessors of Newton.

The following submitted briefs for amici curiae:

*John S. Brown, George P. Mair, Donald-Bruce Abrams, Darcy A. Ryding, & Matthew D. Schnall* for MCI Metro Access Transmission Services, LLC.

*Robert J. Kerwin & John D. Stuebing* for City Solicitor and Town Counsel Association & another.

SPINA, J. The Commissioner of Revenue (commissioner), the board of assessors of Newton (assessors), and RCN-BecoCom, LLC (RCN), appeal from different elements of a final determination of the Appellate Tax Board (board) regarding the taxability under G. L. c. 59 of certain personal property assets of RCN situated in Newton. We granted the parties' joint application for direct appellate review.

1. *Background.*

General Laws c. 59, § 39, requires the commissioner to determine annually the value of the machinery, poles, wires and underground conduits, wire and pipes (statutory property) of all telephone and telegraph companies in the Commonwealth. The commissioner reports the results of his valuation to the company and to the boards of assessors of the cities and towns where such property is located. The local assessors must use this centrally determined valuation when they issue their assessment of the owner's tax obligation to the locality. The purpose of central valuation is to ensure consistency and competence in the valuation of parts of a Statewide system.

The central valuation system began in 1915, following a report from the tax commissioner setting forth local assessors' problems in attempting to value a portion of a system that crossed municipal boundaries and the resulting disparate valuations for affected companies. Report of the Tax Commissioner for Year Ending November 30, 1914, Pub. Doc. No. 16, 27-30

(1915). "It cannot be doubted that [§ 39] was intended to adopt the recommendation of the tax commissioner" to value certain property of telephone and telegraph companies centrally to rectify "inequality in standards of valuation." *Assessors of Springfield* v. *New England Tel. & Tel. Co.*, 330 Mass. 198, 202 (1953).

There is no central valuation mechanism for personal property owned by cable television (alternatively known as community antenna television or CATV) or Internet service providers, although it seems they would be similarly subject to "inequality in standards of valuation." Generally, property owned by cable television or Internet service providers is valued and assessed locally under G. L. c. 59, § 18. See *Nashoba Communications Ltd. Partnership* v. *Assessors of.Danvers*, 429 Mass. 126, 129 (1999). RCN is a provider of telephone, cable television, and Internet services in the Commonwealth. Entities that provide some combination of historically distinct telecommunications services are known as "bundled service providers."

With regard to fiscal year 2000, RCN requested that the commissioner centrally value its statutory property pursuant to G. L. c. 59, §§ 39-41. The commissioner refused because he did not find RCN to be a telephone or telegraph company within the meaning of the statute. RCN appealed from this determination to the board and the assessors were permitted to intervene.

In a separate case, later consolidated with the first appeal, RCN requested the board rule that only its manufacturing machinery be subject to personal property tax under G. L. c. 59, § 18, Second, and that all other machinery be found exempt under G. L. c. 59, § 5, Sixteenth. Section 5, Sixteenth, provides that a company classified as a corporate telephone utility is exempt from tax on all property other than real estate, poles, underground conduits, wires and pipes, and machinery used in manufacturing. RCN is not organized as a corporation. At all relevant times, RCN was a Massachusetts limited liability company.[3] It is important to note that, while a corporate telephone utility would be eligible for the exemption, there is

---

[3]Its members were RCN Telecom of Massachusetts, Inc., a Massachusetts corporation (fifty-one per cent), and BecoCom, Inc., a Massachusetts corporation (forty-nine per cent). The limited liability company originally was formed

no comparative exemption for property owned by companies classified as corporate cable television or Internet service providers. Therefore, the classification decision has significant tax consequences.

The board issued a consolidated final decision finding that for fiscal year 2000: (1) RCN was entitled to have its statutory property valued by the commissioner pursuant to his obligation under G. L. c. 59, § 39, to value such property for all telephone and telegraph companies; (2) any statutory property RCN used for telephone service, even if the property also supported other services, was entitled to central valuation by the commissioner; (3) RCN property, situated in Newton, not involved in telephone service, but otherwise fitting the definition of statutory property, was subject to local valuation, pursuant to G. L. c. 59, §§ 29, 38; and (4) all remaining RCN personal property situated in Newton was subject to local valuation, pursuant to G. L. c. 59, § 18, First.

All parties appeal from this decision of the board, alleging various points of error. For the reasons set out below, we affirm the board's decision in its entirety.

2. *Qualification as a telephone and telegraph company under G. L. c. 59, § 39.*

Section 39 applies to "all telephone and telegraph companies" and contains no definition for those terms nor any limiting language. The statute is remedial in nature. It was enacted to alleviate inconsistent valuations by various localities of system-wide property of telephone and telegraph companies; it was not enacted to exempt the companies' property from taxation. As a remedial measure, not an exemption, the statute must be construed and applied expansively in order to achieve the Legislature's goals. *Walter Kidde & Co.* v. *Commissioner of Revenue*, 389 Mass. 577 (1983).

When faced with a company undeniably engaged in providing telephone services, some method of measuring whether the company has the requisite amount of telephone focus to come within the ambit of § 39 is necessary. The board's choice of

to qualify as a competitive local exchange carrier under the 1996 Telecommunications Act, 47 U.S.C. §§ 251-253 (2000), to compete with established telecommunications providers in Massachusetts.

methodology to discern which entities qualify under G. L. c. 59, § 39, is a matter of law we review de novo. *Commissioner of Revenue* v. *Jafra Cosmetics, Inc.*, 433 Mass. 255, 259 (2001).

The board, relying primarily on *Fernandes Super Mkts., Inc.* v. *State Tax Comm'n*, 371 Mass. 318 (1976), imports a "substantiality" analysis from tax cases in the manufacturing sector. In the *Fernandes* case, this court analyzed what factors to consider in classifying "a corporation [that] conducts both manufacturing and nonmanufacturing activities" under statutes that "do not specify what degree of manufacturing activity is required to classify a corporation as a 'manufacturing corporation.' " *Id.* at 320. The extent of the manufacturing activities are considered in five areas: (1) the financial receipts they bring to the company; (2) the proportion of the entire income they comprise; (3) the percentage of the entire capital that is invested in them; (4) the number of persons employed in them as compared with the total number of employees of the company; and (5) the ratio to the entire business activities of the company. *Id.* at 322-323, quoting *Commissioner of Corps. & Taxation* v. *Assessors of Boston*, 321 Mass. 90, 97 (1947). Ultimately, the company's "entire operations" are reviewed to determine whether the manufacturing activities are "substantial" or "merely trivial or only incidental to its principal business." *Fernandes Super Mkts,, Inc.* v. *State Tax Comm'n, supra* at 322, quoting *Commissioner of Corps. & Taxation* v. *Assessors of Boston*, 324 Mass. 32, 39 (1949). Fernandes Super Markets failed in its bid to be classified as a manufacturing corporation because only 12.6 per cent of its employees engaged in its manufacturing bakery operation and a scant 2.8 per cent of the company's income came from its manufacturing activities. *Fernandes Super Mkts., Inc.* v. *State Tax Comm'n, supra* at 320. In contrast, this court historically has found sufficient manufacturing activity for qualification when as little as twenty per cent of a company's activities were manufacturing in nature. See *Commissioner of Corps. & Taxation* v. *Assessors of Boston, supra* at 38-39 (lumber company engaged in production of mahogany veneer).

Classification as a manufacturing company provides an exemption from property tax under G. L. c. 59, § 5, Sixteenth,

and investment tax credits under G. L. c. 63, § 31A. These consequences are not dissimilar to those that come from classification as a telephone company, making the substantiality test a reasonable one to borrow. The board's analogy to the manufacturing sector is not perfect, but neither is it impermissible, especially in light of the absence of specific guiding language or any language to the contrary in G. L. c. 59, § 39.

This court also has affirmed the substantiality approach to determine whether a corporation involved in diverse activities should be classified as a "utility corporation" and therefore taxed under G. L. c. 63, § 52A. *Tenneco Inc.* v. *Commissioner of Revenue*, 401 Mass. 380, 386 (1987).

The commissioner alleges that the "substantiality" test is inappropriate. He instead suggests an "exclusivity" test, limiting § 39 to those entities that engage solely in telephone or telegraph service, to the exclusion of any other business activity. The commissioner urges that "all telephone companies" should be read to mean every company currently engaged in the sort of business activity engaged in by telephone companies as of the date the statute was enacted. Further, the commissioner distinguishes between "telephone companies" and "companies that engage in or provide telephone service," claiming central valuation is only available to the former, not the latter. Finally, the commissioner concludes that "the ordinary and literal meaning of a telephone company in this property tax statute is a company that owns property over which only telephone type service is provided." No support for this "exclusivity" test, beyond the absence of expansive language in the statute, is offered.

This is overly restrictive and not consistent with the unambiguous language or underlying purpose of the statute. The Legislature is quite capable of saying "exclusive" when it means "exclusive." *Commissioner of Revenue* v. *Cargill, Inc.*, 429 Mass. 79, 82 (1999). Neither does an exclusive interpretation comport with the historical role of telephone and telegraph companies that have provided services other than strictly land-based telephone or telegraph services, as the board discussed in its findings below. Finally, adoption of an exclusivity test undoubtedly would act to chill advances in the telecommunica-

tion field as new technology becomes available, for fear of outpacing the 1915 definition of a "real" telephone company.

The assessors join the commissioner in his argument for the exclusivity test, but should that fail, they offer an alternative "predominant nature of its business" analysis. This approach is suggested for the first time on appeal, and although we need not address it, we note that it is similarly without citation beyond what the assessors see as the plain meaning of G. L. c. 59, § 39.

While the interaction of § 39 with the 1971 cable television statute (G. L. c. 166A) is an appropriate concern, G. L. c. 166A contains no preemption language. It also lacks any exclusivity language, simply defining a "CATV operator" as "a person operating a CATV system." G. L. c. 166A, § 1.

We conclude that the substantiality test articulated by the board is consistent with G. L. c. 59, § 39.

3. *Application of the test to RCN.*

Having accepted the substantiality test as the proper standard, we must review its application by the board in a deferential manner. If the board's determination that RCN qualifies as a telephone company under G. L. c. 59, § 39, was "supported by substantial evidence," it must be affirmed. *Tenneco Inc.* v. *Commissioner of Revenue*, 401 Mass. 380, 383 (1987), citing *Towle* v. *Commissioner of Revenue*, 397 Mass. 599, 601-602 (1986), and *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981). See G. L. c. 58A, § 13. Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). *Boston Edison Co.* v. *Selectmen of Concord*, 355 Mass. 79, 92 (1968).

The board concluded that RCN "surpassed both qualitative and quantitative measures" required by the substantiality test to be considered a telephone company under G. L. c. 59, § 39. In making its determination, the board considered a record in excess of 3,000 pages, held hearings, and conducted a view at RCN's facilities in South Boston and Newton. The board's analysis focused on the plain meaning of the statutory language, RCN's regulatory filings, and the five factors of the substantiality test outlined above. See *Fernandes Super Mkts., Inc.* v. *State*

*Tax Comm'n, supra* at 322-323. The board relied on facts and figures that would have been relevant to the fiscal year 2000 assessment by the commissioner. Occasionally, the board noted that more recent years' numbers only strengthened RCN's case.

As to factor one (the financial receipts telephone service brings to the company), the board found that out of RCN's 59,210 total subscriber connections, 50,524 or slightly over eighty-five per cent were telephone connections, including "off net" (or dial up) Internet connections.[4] Without off net Internet connections, telephone connections still accounted for thirty-five per cent of the total connections. Under factor two (the proportion of the entire income that the telephone receipts comprise) the board found that RCN had total Massachusetts revenues of $16,443,760. Telephone revenue, including off net Internet access, accounted for $14,630,578 or almost eighty-nine per cent of the revenue. Without off net Internet access, telephone service still accounted for almost sixty-five per cent of the total revenue. Under factor three (the percentage of the entire capital that is invested in telephone services), the board found that the majority of RCN's property was shared by the three basic services it offered. Further, of the property that was not shared, more property was dedicated exclusively to telephone service than to cable service, in terms of both quantity and value. Addressing factor four (the number of persons employed in telephone services as compared with the total number of employees of the company), the board found RCN had 192 employees. Six were dedicated exclusively to cable television service whereas twenty-four were dedicated exclusively to telephone service. At least ninety-five per cent of the 192 worked on telephone service to some extent. Finally, under factor five (the ratio of telephone service to the entire business activities of the company), the board summed up its findings under the first four factors to conclude that RCN "used property,

---

[4]The board included dial-up Internet access because it accepted RCN's analogy that the transmission of information through dial up is the equivalent of the transmission of information by way of facsimile machine and therefore appropriately included in telephone service. For current technology, this analogy would also encompass DSL (Digital Subscriber Line) access. Cable based Internet access might require a different analysis.

provided services, submitted regulatory filings, was granted rights, generated revenue, maintained connections, and allocated resources" such that "telephone service constituted a substantial part of its business."

The board's findings are extensive, careful, and measured. The evidence offered by the commissioner and the assessors on appeal which they say contradicts the findings was all before the board as part of the stipulated record or as a result of the hearings and we presume the board gave it due weight.[5] Certainly, the board had before it "such evidence as a reasonable mind might accept as adequate to support a conclusion," and we will not disturb its classification of RCN as a telephone company under G. L. c. 59, § 39.

4. *Taxability of RCN's property under G. L. c. 59.*

a. *Exemption under G. L. c. 59, § 5.* RCN claims it is exempt from taxation under G. L. c. 59, § 5, Sixteenth. Section 5 provides guidance as to which property in the Commonwealth is exempt from taxation. Clause Sixteenth, in relevant part, states that all property owned by "a Massachusetts corporation subject to taxation under [c. 63]," other than real estate, poles, underground conduits, wires and pipes, and machinery used in manufacturing, is exempt from taxation. RCN, as a limited liability company, is not a corporation subject to taxation under G. L. c. 63. Therefore, the exemption provided by G. L. c. 59, § 5, Sixteenth, does not apply.

Relying on *Commissioner of Revenue* v. *BayBank Middlesex*, 421 Mass. 736 (1996), RCN urges that the commissioner's historical practice of granting the § 5, Sixteenth, corporate exemption to all telephone companies, irrespective of how the business entity was organized or held, bound the commissioner for fiscal year 2000.

While administrative agencies must abide by their own internally promulgated policies, *id.* at 739, undue weight is not to be given to administrative interpretations of statutes that are

---

[5]Some of the figures offered by the commissioner or the assessors that would seem to contradict the board's findings are derived by counting only those business resources devoted exclusively to telephone service and excluding any resources, equipment, or personnel that support both traditional telephone service and at least one other service. This was not the board's approach.

not ambiguous on their own, especially if the interpretation was not issued contemporaneously with the enactment of the statute. *Assessors of Holyoke* v. *State Tax Comm'n*, 355 Mass. 223, 243 (1969); *Eaton Fin. Corp.* v. *Commissioner of Revenue*, 26 Mass. App. Tax Bd. Rep. 86, 91 (2000).

The board determined, and we agree, that § 5, Sixteenth, is not ambiguous. By its plain language, it applies to corporations, not limited liability companies. In such a situation, the commissioner's practice clearly was erroneous and beyond the scope of the statute. As such, it is not entitled to deference. See *Assessors of Holyoke* v. *State Tax Comm'n*, *supra*.

RCN's claims of reliance and estoppel are further undermined by the fact that the commissioner in this matter, unlike in the *BayBank Middlesex* case, never promulgated any written instructions or guidelines to taxpayers or to RCN directly regarding his practice. Most significantly, neither *BayBank Middlesex* nor any other case cited by RCN as precedent to bind the commissioner involved a third party with its own statutory right of appeal which would be harmed by the application of the commissioner's past practice. In this matter, G. L. c. 59, § 39, specifically affords the assessors an independent right to challenge the commissioner's valuation of a telephone company's statutory property.

The board determined, and we agree, that neither the supremacy clause of the United States Constitution nor the Telecommunications Act of 1996 was violated by taxing RCN's nonmanufacturing machinery where the same property of its competitors was not taxed. It reasoned that the main cause of the disparate treatment was RCN's voluntary election to do business in Massachusetts as a limited liability company, rendering itself ineligible for the corporate exemption under § 5, Sixteenth. While RCN protests that it was treated differently from other telephone companies organized as limited liability companies, that claim is disposed of by our ruling above that the commissioner did not have the authority to extend the exemption of G. L. c. 59, § 5, Sixteenth, to any entity that was not a corporation. To the extent that the commissioner has, in the past, acted in excess of that authority with respect to any other telephone company, he cannot be required to perpetuate that error.

b. *Applicability of G. L. c. 59, § 18.* RCN concedes that its nonmachinery tangible personal property (in Newton, its wires and underground conduits) is taxable under G. L. c. 59, § 18, First. RCN claims that because some of its machinery is subject to taxation under clause Second, the rest of its machinery is immune from taxation under clause First, both of which, along with the preamble, are set out in the margin.[6] RCN interprets these clauses as mutually exclusive, with clause Second taking precedence. The court has not yet decided this matter of statutory interpretation. See *Nashoba Communications Ltd. Partnership* v. *Assessors of Danvers,* 429 Mass. 126 (1999); *Warner Amex Cable Communications, Inc.* v. *Assessors of Everett,* 396 Mass. 239 (1985); *Assessors of Springfield* v. *Commissioner of Corps. & Taxation,* 321 Mass. 186 (1947).

Clause Second was enacted in 1830, providing that machinery employed in any branch of manufacture should be assessed where located to the owner or any person in possession. St. 1830, c. 151, § 2. Amendments in 1887 and 1889 added taxation for other classes of property not relevant here. Clause First was enacted in 1918, taxing "[a]ll tangible personal property" not otherwise exempt in the city or town where it is situated. This presumably included personal property not previously subject to tax, like nonmanufacturing machinery. Clause Second

---

[6]General Laws c. 59, § 18, provides in relevant part: "All taxable personal estate within or without the commonwealth shall be assessed to the owner in the town where he is an inhabitant on January first, except as provided in [c. 63] and in the following clauses of this section:

"First, All tangible personal property, including that of persons not inhabitants of the commonwealth, except ships and vessels, shall, unless exempted by section five, be taxed to the owner in the town where it is situated on January first. Ships and vessels, except those used in or designed for use in carrying trade or commercial fishing, shall be taxed to the owner as of July first in the town where it is habitually moored or docked, otherwise where it is principally situated during the calendar year.

"Second, Machinery employed in any branch of manufacture or in supplying or distributing water, including machines used or operated under a stipulation providing for the payment of a royalty or compensation in the nature of a royalty for the privilege of using or operating the same, and all tangible personal property within the commonwealth leased for profit, or, in the case of domestic business and foreign corporations as defined in [G. L. c. 63, § 30,] machinery used in the conduct of the business, shall be assessed where such machinery or tangible personal property is situated to the owner or any person having possession of the same on January first."

was not repealed, St. 1918, c. 129, § 1; rather, in 1924, it was extended to cover, in the case of domestic or foreign corporations, machinery owned by and used in the conduct of their business, not merely manufacturing machinery. St. 1924, c. 321, § 2. On quick review, it seems that clause First simply duplicates and expands on clause Second, but there is one salient distinction that might have prevented the repeal of clause Second as surplusage. Clause Second currently allows assessing a tax on manufacturing machinery or machinery used in the course of business by corporations "to the owner or *any person having possession*" (emphasis added). Clause First duplicates clause Second in many ways, but clause Second retains importance "by making the property to which it relates taxable to the person in possession rather than to the owner, if the assessors so elect." P. Nichols, Taxation in Massachusetts 281 (3d ed. 1938).

The board properly rejected RCN's argument that machinery not taxable under clause Second is exempt. The plain text of the statute does not preclude the application of clause First to machinery that does not fall under the purview of clause Second. Thus, the board was correct in finding that all of RCN's personal property was subject to taxation. All property not subject to central valuation is to be valued, assessed, and taxed by the locality where it was situated on January 1, as required by G. L. c. 59, § 18.

Because we have found clause First applies to RCN, there is no need to reach the applicability of clause Sixth, relating to taxing property of partnerships.

5. *Determination of central versus local valuation under G. L. c. 59.*

RCN designates its personal property for its records and submissions to taxing authorities as either dedicated telephone property, dedicated video property, dedicated Internet property, or shared property. Shared property includes the property that functionally services more than one of the bundled services in some manner.

General Laws c. 59, § 39, states: "The valuation at which the machinery, poles, wires and underground conduits, wires and pipes of all telephone and telegraph companies . . . shall

be determined annually by the commissioner of revenue . . . ." The board ruled that any of RCN's statutory property "that was used for the delivery of its telephone services and [therefore] supported [RCN's] status as a telephone company" was eligible for central valuation. Property that exclusively supports either cable television or Internet service or shared property that does not support telephone service is to be valued locally.

RCN alleges error, claiming that once an entity is classified as a telephone company under § 39, all of its statutory property should be eligible for central valuation. It bases this assertion on the language of § 39 and the principle of efficiency.

The commissioner and the assessors allege error, asserting that, if RCN is a telephone company, only that property that exclusively supports telephone service should be centrally valued. The basis for this position is the effect any other interpretation would have on the revenues generated under the cable television statute, G. L. c. 166A, seeking a harmonious reconciliation of that statute with G. L. c. 59, § 39, and the technical competence of the commissioner to value equipment used for both telephone and other services (i.e., shared property supporting telephone services).

RCN has claimed it meets or exceeds the criteria to be determined to be "substantially" a telephone company. It has never claimed to be "only" a telephone company, nor does it deny being either a cable television or Internet service provider. Historically, it has made contemporaneous filings with the Department of Telecommunications and Energy consistent with status both as a cable television service provider and as a telephone company. The reality, based on the extensive financial and property records before the board, is that RCN is "substantially" all of those things and no one function is predominant.

Chapter 59, §§ 39 and 41, clearly contemplate a dual valuation system in which some property of a company is locally valued while other property is centrally valued. See *Assessors of Springfield* v. *New England Tel. & Tel. Co.*, 330 Mass. 198, 202, 203-204 (1953) ("other kinds of property" are to be valued locally). The language designating "machinery, poles, wires and underground conduits, wires and pipes" of all telephone and

telegraph companies does not prevent consideration of multipurpose property involved in telephone service. This division of property into "telephone" and "nontelephone" for valuation purposes adheres to the remedial purposes of G. L. c. 59, § 39, without expanding it unjustifiably to the statutory property not part of the telephone service enterprise. We affirm.

We again note that G. L. c. 166A contains no preemption provision nor any definition of a cable service provider that would prevent such a provider from also being classified as a telephone utility. Specifically, a "CATV operator" is defined as "a person operating a CATV system." G. L. c. 166A, § 1. Dual classification is not prohibited by either statute.

6. *Conclusion.*

If Newton's assessors would have used a higher valuation for RCN's statutory property than the commissioner, the board's decision deprives Newton of certain tax revenue. If the commissioner's valuation is higher than Newton's assessors' would have been, the opposite holds true. Although there is an inefficiency in having separate entities value different parts of the same system, the value of consistency across community lines for the telephone and telegraph assessments, one of the underlying goals of G. L. c. 59, § 39, balances against that.

The prospective classification of corporate bundled service providers as telephone companies under § 39 (as opposed to noncorporate entities such as this limited liability company) has a much greater potential economic impact on the cities and towns of the Commonwealth. Corporate telephone utilities are exempt from tax on all property other than real estate, poles, underground conduits, wires, pipes, and machinery used in manufacturing. G. L. c. 59, § 5, Sixteenth. There is no comparative exemption for property owned by corporate cable television or Internet service providers. Prospectively, if all bundled service providers can show a substantial telephone component to their business, this decision may have a significant impact on future municipal finances.

We must, however, recognize, that the opposite result is equally disturbing. If bundled service providers with substantial telephone business cannot qualify as telephone companies under G. L. c. 59, § 39, historically recognized telephone companies,

as they expand their service provision to other means to remain competitive, would be subject to sudden, unexpected loss of their favored tax status and a reversion to local valuation for property that has been centrally valued by the commissioner for as long as eighty years or more. The board found that all of RCN's competitors who were classified by the commissioner as telephone companies were either providing or seeking to provide the same basic services as RCN. It seems likely that, under either the exclusivity or predominant activity tests urged by the commissioner and the assessors, there would be no entities currently in operation in Massachusetts that could qualify as telephone companies under § 39.

We are confined by the language of the statutes before us. We cannot read § 39 in such a way as to strip its language of meaning, as that would amount to judicial repeal. The board's harmonization is reasonable and takes into account the complications presented by the changing nature of the communications industry. Undoubtedly, as technology will continue its advance, the Legislature will soon revisit both G. L. c. 59, § 39, and G. L. c. 166A to update and reconcile their effect, consistent with public policy goals.

*Decision of the Appellate Tax Board affirmed.*